**BLAKE CONSTRUCTION COMPANY, INC., on its own behalf and to the use of Rudolph and West Company**

v.

**The UNITED STATES.**

**No. 475–76.**

United States Court of Claims.

April 18, 1979.

Thomas S. Jackson, Washington, D.C., attorney of record, for plaintiff. H. Donald Kistler, John S. Miles, and Jackson, Campbell & Parkinson, Washington, D.C., of counsel.

Lynn J. Bush, Washington, D.C., with whom was Asst. Atty. Gen., Barbara Allen Babcock, Washington, D.C., for defendant.

Before DAVIS, NICHOLS, and SMITH, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

SMITH, Judge.

This case is before the court on the parties' cross-motions for summary judgment, the trial judge having determined, under Rule 166(b), that the issues are limited to issues of law within the purview of section 2 of the Wunderlich Act, 41 U.S.C. § 322 (1976). After carefully reviewing the briefs and oral arguments presented by the par-

ties, as well as the decision of the General Services Administration Board of Contract Appeals (board), we hold in favor of plaintiff.

## I.

Blake Construction Company, Inc. (plaintiff), was the successful bidder on contract No. GS–03B–16644 for construction of the superstructure (Phase II) of the J. Edgar Hoover (FBI) Building, Washington, D.C. Under this contract, awarded by the General Services Administration (GSA) on June 14, 1971, plaintiff was to supply the finish hardware for the structure, including the locksets which were to be installed on the doors of the FBI Building.

In March 1972, plaintiff, on behalf of its supplier,[1] submitted a physical sample, the Falcon Lock Set No. 2520 HG 32D (Type 86E), to GSA for approval. However, defendant's contracting officer determined that the Falcon lockset did not meet contract specifications as to fabrication; specifically, that the rose and knob of the lockset were of wrought fabrication instead of cast fabrication, as specified in paragraph 6.2[2] of the contract specifications.[3] These objections were detailed in the contracting officer's final decision letter of May 22, 1972.

Plaintiff thereupon submitted another lockset, the 763 Milan by Corbin, one of the samples listed in the contract specifications for trim design.[4] This lockset, more expensive than the rejected Falcon lockset, was accepted by the contracting officer as meeting contract requirements, although it was ultimately discovered that the Corbin was also of wrought, not cast, fabrication.

Plaintiff filed a timely notice of appeal from the contracting officer's decision letter and a complaint with the board, seeking payment to plaintiff and its supplier of an amount sufficient as an equitable adjustment to compensate them for the allegedly wrongful rejection of the Falcon lockset. Following a hearing, the board, on August 29, 1973, held that while the Falcon lockset met contract requirements with regard to appearance, it did not meet contract specifications with regard to fabrication.[5] On November 19, 1976, plaintiff filed a petition in this court seeking a reversal of the board's decision and an order remanding the case to the board for determination of the appropriate equitable adjustment.

## II.

The only issue in the case involves the interpretation[6] of contract specification section 0870, "Finish Hardware."[7] Plaintiff contends that Interim Federal Specification FF–H–00106b,[8] incorporated by reference into the contract through paragraph 1.8 of section 0870 of the specifications and paragraph 17.1.1 of the General Conditions,[9] allows the supplier the option of furnishing trims of wrought fabrication whenever cast fabrication is specified; that paragraph 6.2 of the contract specifications provides that, "[t]rim material shall be * * * of cast fabrication"; that nowhere in the contract

1.  Plaintiff sues here in its own behalf and to the use of its subcontractor, Rudolph and West Company of Washington, D.C., which company supplied the stainless steel locksets which are the subject of this controversy.

2.  See Appendix A.

3.  The contracting officer also found the lockset's appearance objectionable, but since the board found that the Falcon lockset did meet contract specifications as to appearance, and defendant apparently accepts that finding, there is no need for us to rule on this point.

4.  See Appendix A.

5.  *Blake Constr. Co.,* 73–2 BCA ¶ 10,221, GSBCA No. 3675. The "appearance" holding

was unanimous. The "fabrication" holding was 2 to 1, Mr. Broxton dissenting.

6.  Plaintiff's reference to 41 U.S.C. § 321 (1976) —asserting the board's interpretation was not supported by substantial evidence—is misplaced. An issue as to the meaning of language in a contract is for this court to decide independently, as no finality is attached to a conclusion of law reached by the board. *Allied Paint Mfg. Co. v. United States,* 470 F.2d 556, 200 Ct.Cl. 313 (1972).

7.  See Appendix A.

8.  See Appendix B.

9.  See Appendix C; see also Appendix A.

has the Government amended, modified, or eliminated the option; and that, therefore, the board was wrong in holding that the trim material had to be of cast fabrication alone.

Defendant contends that the option, otherwise available under paragraph 3.2.3 of the interim federal specifications, could, under paragraph 17.1.1 of the General Conditions, be "modified or * * * otherwise provided in the specifications"; [10] that paragraph 1.8 of the contract specifications [11] referred to "modified requirements specified herein"; that paragraphs 6.2, 6.5, and 6.6 of the contract specifications [12] called for cast fabrication; and that by specifying "cast fabrication," the Government had effectively specified its option as to the selection of type of fabrication and had rendered the supplier's option inoperative. Defendant's position is that there is a "hierarchy" of specifications and that, in the event of a conflict, contract specifications "control" over federal specifications. [13]

To accept defendant's argument would be to assume that the act of "specifying" cast fabrication both triggers and eliminates the supplier's option, for the option is not available except "[w]hen cast trims are specified." [14] (Emphasis supplied.) Defendant's interpretation violates one of the cardinal principles of contract interpretation, that an interpretation which gives reasonable meaning to all parts of an instrument is preferred to one which leaves a portion of it useless, inoperative, void, meaningless, or superfluous. [15] That defendant's interpretation rendered one portion of the contract

meaningless and superfluous was succinctly explicated in the dissenting opinion of Mr. Broxton:

The only way [the contractor/supplier] can elect to use wrought fabrication is for the specifications to require cast fabrication. If the specifications do not specify cast fabrication then the wrought[-]cast fabrication option in Paragraph 3.2.3 can not be exercised. If, however, cast fabrication is specified, [plaintiff] under the majority decision is barred from using wrought fabrication! Such an interpretation entraps the contractor and produces an intolerable result. [73–2 BCA at 48,182.]

■ We think paragraph 6.2 of section 0870 of the contract specifications can be read as follows:

Trim material shall be stainless steel of cast [or 0.050-inch minimum thickness wrought] fabrication.

There is no language in the contract (or in the bid invitation) expressly restricting or eliminating the fabrication option; the Government may not eliminate the option simply through an act of omission. [16]

### III.

As a secondary ground for its decision, the board determined that the requirements of paragraph 3.2.3 of the interim federal specifications were not met, the basis of its reasoning being that that paragraph not only begins "[w]hen cast trims are specified," but continues with the language "*in US32 or US32D finishes*" (emphasis sup-

10. See Appendices B and C.

11. See Appendix A.

12. See Appendix A.

13. As we find no conflict between the contract specifications and the interim federal specifications, we need not address defendant's argument that plaintiff had a duty to seek clarification of the contract provisions.

14. See ¶ 3.2.3 of Appendix B.

15. *Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 169 Ct.Cl. 384 (1965).

16. Since we find plaintiff's interpretation reasonable, and defendant's unreasonable, there is

no need to resort to the doctrine of *Peter Kiewit Sons' Co. v. United States*, 109 Ct.Cl. 390, 418 (1947), that any contract provisions susceptible to more than one reasonable construction must be construed against the party who drafted the contract. As defendant points out in its cross-motion for summary judgment and opposition to plaintiff's motion for summary judgment, "contracts are not necessarily rendered ambiguous by the mere fact that the parties disagree as to the meaning of their provisions." *See Southern Constr. Co. v. United States*, 364 F.2d 439, 453, 176 Ct.Cl. 1339, 1361–62 (1966), *quoting Jefferson Constr. Co. v. United States*, 151 Ct.Cl. 75, 84 (1960).

plied), whereas the language of paragraph 6.2 of the contract specifications states that "[t]rim material shall be stainless steel of cast fabrication."

We fail to discern any significance in the difference of phraseology. The board itself recognized that the language "in US32 or US32D finishes" was superfluous since paragraph 23 of the contract specifications listed every Type 86E lockset as stainless steel with US32D finish. Defendant interprets the board's position as follows:

> The Board determined that paragraph 3.2.3's requirement that cast trims be specified in a certain finish was not met because the contract requirements went beyond specifying cast trim merely by finish, and specified the cast trim by fabrication as well.

As we interpret this opaque language, redundancy is the key to eliminating the option: "trim" should read "cast trim," and "[Cast t]rim * * * shall be * * * of cast fabrication" means something more emphatic than "cast trim." Defendant would have paragraph 3.2.3 read "when trims are specified in US32 or US32D finishes *and of cast fabrication,*" instead of "[w]hen *cast* trims are specified in US32 or US32D finishes," before it would concede that plaintiff has the better of the argument. We are not inclined to be that exacting.[17]

### IV.

In view of our holdings set forth above, we do not find it necessary to reach and do not pass upon plaintiff's contention that defendant was estopped to reject the Falcon lockset.

### CONCLUSION

■ For the foregoing reasons, we grant plaintiff's motion for summary judgment, deny defendant's cross-motion for summary judgment, and remand the case to the General Services Administration Board of Contract Appeals for a determination of the equitable adjustment due plaintiff and its supplier for the wrongful rejection of the Falcon lockset, with further proceedings before this court stayed for a period of 6 months from the date hereof. Plaintiff's counsel is designated to advise the court by letter to the trial judge of the status of the remand proceedings pursuant to Rule 149(f). Attention of counsel and the board is also directed to Rule 150.

### APPENDIX A

Section 0870, "Finish Hardware," of the contract specifications provides, in part, as follows:

1. GENERAL

* * * * * *

1.8 Hardware types noted in HARDWARE SETS schedule shall meet applicable requirements of the following Federal Specifications including amendments, and modified requirements specified herein:

FF–H–00106b—Hardware, Builders'; Locks and Door Trim.

* * * * * *

6. TRIM DESIGN

6.1 Lock trim design shall be similar in appearance and dimension to:

| <u>Athena</u>, | by | <u>Sargent</u>, | <u>763 Milan</u>, | by |
|---|---|---|---|---|
| (Design Name) | | (Manufacturer) | (Design Name) | |
| <u>Corbin</u>, | or | <u>Ronde</u>, | by | <u>Russwin</u>. |
| (Manufacturer) | | (Design Name) | | (Manufacturer) |

6.2 Trim material shall be stainless steel of cast fabrication. * * *

* * * * * *

6.5 Knob shanks shall be screwless type of same material as knob top * * *; manufacturer's standard cast fabrication. * * *

6.6 Roses shall be same material as knob and shall have a shell thickness of not less than 0.050-inch; manufacturer's standard cast fabrication.

* * * * * *

---

17. There was evidence before the board that the supplier made diligent but unsuccessful efforts to find a lockset of the required design and fabrication, and that the 763 Milan, thought to be of cast fabrication, was determined to be of wrought fabrication only after independent testing. This suggests that the option, provided in the interim federal specifications, had its genesis in a practical observation that neither method of fabrication offered any significant advantage over the other.

## APPENDIX A—Continued

### 23. HARDWARD SETS

Quantity Item Type Material Finish Other

[This schedule consists of 14 pages (0870–10 to 0870–23) of hardware sets each described or otherwise identified under the above column headings.]

## APPENDIX B

Interim Federal Specification FF–H–00106b (GSA–FSS), entitled "Hardware, Builders'; Locks and Door Trim," in section 3, "Requirements," provides, in part, as follows:

3.1 Applicable requirements. The hardware shall conform (a) to all requirements given herein under the type number for which it is furnished, (b) to any other applicable requirements in this section, and (c) to any additional requirements specified in the invitation for bids in accordance with selective variations provided herein as to size, length, finish, etc. * * *

3.1.1 *Supplier's options.* Where variations are permitted herein as to materials, construction, appearance, or other characteristics, hardware conforming to any of the options thus provided, as well as to all other applicable requirements given herein, shall be considered as meeting this specification.

* * * * * *

3.2.1 *Optional materials.* Substitution of materials may be made in accordance with the following:

### MATERIALS SPECIFIED OPTIONAL MATERIALS

* * * * * *

Stainless steel    None

* * * * * *

3.2.3 *Stainless steel.* When cast trims are specified in US32 or US32D finishes, 0.050 inch minimum thickness wrought trim may be furnished, except that this minimum shall not apply to the knob trim ring or to any areas of trim parts which are coined or recessed for decorative purposes. Stainless steel shall comply with the chemical composition for any class "300" austenitic steel conforming to QQ–

S–766, except that parts requiring hardening by heat treatment shall be of class "400" mastensitic steels.

Section 6, "Notes," of Interim Federal Specification FF–H–00106b provides, in part, as follows:

6.1 Purchaser's options. Builders' locks and door trim should be specified by type number or set number, and any selections should be specified as to size, hand, finish, or other selective variations provided herein under each type and in 3.1 to 3.31.3, inclusive. All such options should be specified in the invitation for bids.

* * * * * *

6.8 Finishes.

* * * * * *

6.8.3 Standard finishes. * * *

TABLE II.   Standard finishes for builders' hardware

| Symbol | General Description | Metal applied to | Restrictions |
|--------|---------------------|------------------|--------------|
| * | *   *   * | * | *   * |
| US32 | Stainless steel, polished* | Stainless steel | — |
| US32D | Stainless steel, dull | Stainless steel | — |

* Footnote omitted.

## APPENDIX C

Section 0010, "General Conditions" (GSA Form 1139, Apr. 1968), provides in part, as follows:

### 17.  STANDARD REFERENCES

17.1 All documents and publications (such as, but not limited to, manuals, handbooks, codes, standards and specifications) which are cited in this contract for the purpose of establishing requirements applicable to equipment, materials, or workmanship under this contract, shall be deemed to be incorporated herein as fully as if printed and bound with the specifications of this contract, in accordance with the following:

17.1.1 Wherever reference is made to Standard Specifications of the Public Buildings Service, Interim Federal Specifications, Interim Amendments to Federal Specifications, Interim Federal Standards, or Interim Amendments to Federal

APPENDIX C—Continued

Standards, the Contractor shall comply with the requirements set out in the issue or edition identified in this contract except as modified or as otherwise provided in the specifications of this contract.