**TENNESSEE VALLEY AUTHORITY**

v.

**EXXON NUCLEAR COMPANY, INC. and Exxon Corporation.**

Civ. No. 3–83–230.

United States District Court, E.D. Tennessee, N.D.

Aug. 22, 1983.

MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

In this action, plaintiff Tennessee Valley Authority ("TVA") appeals, pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 607(g)(2), from a final decision of the TVA Board of Contract Appeals. The case is before the Court on cross-motions for summary judgment.

The dispute arises under a contract dated August 27, 1970, between TVA and Jersey Nuclear Company, the corporate predecessor of defendant, Exxon Nuclear Company, Inc. ("ENC"). Pursuant to the contract, Jersey Nuclear agreed to supply uranium fuel to TVA over an eleven year period at a base price of $6.40 per pound, subject to escalation according to Bureau of Labor Statistics indices. The contract provided that the stated prices were "subject to adjustment for changes upward or downward in Jersey Nuclear Company's costs." Special Conditions 3 and 16 provided for increases or decreases in the contract price to reflect changes in the cost of furnishing the uranium and to prevent "any gross inequity that may result from unusual economic conditions."

Defendants ENC and Exxon Corporation now seek an upward price adjustment to cover increased costs of furnishing uranium. The issue in the case is whether the contract may be construed or modified to allow price adjustments for costs incurred by Exxon Corporation and the Exxon Mineral Company, rather than by the parties to the contract, Jersey Nuclear and ENC. An understanding of the corporate structure of Exxon Corporation, its predecessors, its subsidiaries, and its divisions is essential to the resolution of this issue.

At the time the contract was executed, Exxon Corporation was known as Standard Oil Company of New Jersey ("Jersey Standard"). In 1969 Jersey Standard decided to mine and market $U_3O_8$ (uranium concentrates) and fabricated uranium fuel. Jersey Nuclear Company ("Jersey Nuclear") was incorporated to develop a market for the fuel, some of which was to be mined at

Herbert S. Sanger, Jr., Gen. Counsel, Charles W. VanBeke, Asst. Gen. Counsel, Richard B. Campbell, D. Mark Hastings, T.V.A., Knoxville, Tenn., for plaintiff.

E.H. Rayson/John Rayson, Knoxville, Tenn., Randall M. Paris, Exxon Nuclear Co., Inc., Bellevue, Wash., O.S. Hiestand, Thomas F. Williamson, Marcia G. Madsen, Kathleen E. Troy, Morgan, Lewis & Bockius, Washington, D.C., for defendant.

mines owned by Jersey Standard. Jersey Nuclear was a wholly-owned subsidiary of Jersey Standard.

In 1970 Jersey Nuclear bid on and was awarded a contract to supply 1,200,000 pounds of $U_3O_8$ to TVA. The contract listed Jersey Nuclear as the bidder and included Special Conditions 3 and 16 set forth above. Jersey Standard was not a party to the contract.

After the contract was negotiated, Jersey Nuclear and the Mineral Department of Humble Oil and Refining Company, another Jersey Standard subsidiary, signed a Memorandum of Agreement governing the marketing of Humble-produced uranium. Pursuant to the agreement, Humble's selling price was to be equal to Jersey Nuclear's resale price minus one percent. The supplier's price was therefore contingent on Jersey Nuclear's marketing success, without relation to the actual costs of producing uranium. No provision allowed Humble to pass along increased costs to Jersey Nuclear.

In 1972 Jersey Standard changed its name to Exxon Corporation and Jersey Nuclear became Exxon Nuclear Company, Inc. Since 1970 the Exxon minerals division has also undergone several name changes and reorganizations within the parent company. It is now a separate division of Exxon: the Exxon Minerals Company.

On December 15, 1978, defendants filed a claim for increased costs incurred by Exxon and Exxon Minerals Company in producing the $U_3O_8$. The TVA contracting officer denied the claim on the ground that ENC did not incur the increased costs. The TVA Board of Contract Appeals reversed. The Board found that there had been no meeting of the minds as to the allocation of unanticipated costs and that "it seemed appropriate to treat Exxon Corporation as an intended third-party beneficiary" of the contract. Applying equity principles, the Board concluded that TVA should be liable for one-half of Exxon's increased costs.

Exxon says that substantial evidence supports the Board's findings and that the Board correctly applied equitable principles

in reaching its result. On the other hand, TVA asserts that the Board erred as a matter of law in supplying the "omitted" contract term that TVA would be liable for a portion of the increased mining costs incurred by the third party, Exxon Corporation. TVA says the contract is unambiguous and complete on its face. It says further that the special conditions to the written contract require TVA to cover only increased costs incurred by ENC, the other contracting party. TVA characterizes the Board's decision as permitting Exxon and ENC to pierce their "corporate veil" for their own benefit, while taking advantage of their separate corporate structures in other contexts.

The Contract Disputes Act provides that the Board's decision,

on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

41 U.S.C. § 609(b). Decisions on questions of law are neither final nor conclusive, however. *Id.* Contract interpretation is a matter of law for the Court. *See Blake Construction Co. v. United States,* 220 Ct.Cl. 56, 597 F.2d 1357 (1979).

It is fundamental that "when clear contract language itself reveals the intent of the parties, there is no need to turn to rules of construction." *Golden v. Henderson,* 456 F.2d 376, 380 (6th Cir.1972), citing e.g., *Florida Canada Corp. v. Union Carbide & Carbon Corp.,* 280 F.2d 193 (6th Cir.1960). In the instant case the Board made the factual finding that "the contractor" within the plain meaning of Special Condition 3 was only ENC. Likewise, it found that that "Special Condition 16 as it would reasonably be understood in its normal application" covered only costs incurred by ENC. It found that Exxon Corporation in no way bound itself to TVA. In direct conflict with these findings, however, the Board concluded that neither party knew of the other's interpretation of the Special

Conditions as applied to the ENC—Exxon Corporation relationship.

The Court agrees with TVA that no essential term was omitted from the contract. Clearly, TVA did not obligate itself for any increased costs not passed on to ENC. The Board's decision to treat Exxon as an intended third-party beneficiary and to disregard its separate corporate status for the purpose of this suit was clearly erroneous and contrary to the plain language of the contract. Exxon Corporation and ENC chose particular corporate forms of carrying on their businesses to gain income tax and other regulatory advantages. They must now abide by their choices. *See Schenley Distillers Corp. v. United States,* 326 U.S. 432, 436–437, 66 S.Ct. 247, 249, 90 L.Ed. 181 (1946); *see also, Volasco Products Co. v. Lloyd A. Fry Roofing Co.,* 308 F.2d 383, 394 (6th Cir.1962), *cert. denied,* 372 U.S. 907, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963). Accordingly, TVA cannot be charged with Exxon Corporation's increased costs.

Because substantial evidence and principals of contract interpretation do not support the Board's result, it is ORDERED that Tennessee Valley Authority's motion for summary judgment be, and the same hereby is, granted. It is further ORDERED that Exxon Nuclear Company Inc. and Exxon Corporation's motion for summary judgment be, and the same hereby is, denied. It is further ORDERED that the decision of the Board of Contract Appeals be reversed and defendant's claim under the Contract Disputes Act be dismissed.

Order accordingly.