CHERRY HILL SAND &
GRAVEL CO., INC.

v.

The UNITED STATES.

No. 180–84C.

United States Claims Court.

Sept. 18, 1985.

Douglas G. Worrall, Baltimore, Md. for plaintiff; Danny B. O'Connor and Smith, Somerville & Case, of counsel.

George M. Beasley, III, Washington, D.C. with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant; Julia Perry, Federal Highway Administration, of counsel.

OPINION

LYDON, Judge:

In this contract case, the court is presented with plaintiff's motion and defendant's cross-motion for summary judgment. Both parties contend that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. The dispute in this case surrounds the interpretation of a contract provision regarding the proper measure of payment for the installation of sound barrier walls along a highway. Plaintiff contends that the plain and ordinary meaning of the contract language controls. Defendant, on the other hand, maintains that a patent ambiguity existed in the payment provision which required plaintiff to inquire into the meaning of the provision before submitting its bid. In addition, defendant contends that plaintiff's interpretation of the contract provision at issue is unreasonable given the totality of the circumstances. Having reviewed the uncontroverted facts, the submissions of the parties, and pertinent case law, and after oral argument, the court concludes that defendant's cross-motion for summary judgment should be granted.

I.

On November 24, 1981, the United States Department of Transportation, Federal Highway Administration (FHWA) issued an Invitation for Bids (IFB) for grading, drainage, base, surfacing, structures and other work along the Dulles Access Highway Extension in Fairfax County, Virginia. Such work included the installation of sound barriers or noise walls along one portion of the highway. Eighteen bids, received in response to this IFB, were opened on January 19, 1982, and plaintiff's bid ($6,886,228.50) was the low bid. The FHWA estimate for the job, which was unpublished until bid opening, was $9,510,-000, and the other bids received ranged from $7,400,000 to $10,000,000. The contract (No. DTFH71–82–C–00001) was awarded to plaintiff on February 5, 1982.

Plaintiff presents no claim regarding the payment it received for the grading and drainage work performed by it. There is no dispute over the quality of that work. The only dispute in this case involves the installation of the noise walls. Plaintiff's bid price on the noise wall portion of the IFB was $1,162,000. The estimate of defendant's engineers for the same work was $764,800. The other bids ranged from $1,010,000 to $1,450,000. Plaintiff commenced installation of the sound barriers in early 1983 and completed the work by September of the same year. No issue has been raised concerning the quality of the work performed.

However, a dispute did arise in this case regarding the proper method of payment as provided for in the contract. Sections 640.06 and 640.07 of the contract govern the method of payment. These sections as originally set out in the IFB stated:

METHOD OF PAYMENT

640.06. Laminated wood noise walls will be measured by the square foot of ex-

posed area (as seen from the roadway) of the same type (thickness) of panels.

## BASIS OF PAYMENT

640.07. Noise wall will be paid for at the contract unit price per square foot, complete in place, which price shall be full compensation for all panels, cap boards, hardware, excavation, backfill and compaction, disposal of surplus or unsuitable material, restoration of property, and all materials, labor, tools, and equipment, and incidentals necessary to complete the work.

| Pay Item | Pay Unit |
|---|---|
| 640(a) Laminated wood noise wall | square foot |

The IFB was amended, however, on December 30, 1981 to alter the method of payment as set out in section 640.06. The amended section 640.06 read:

640.06. Laminated wood noise walls will be measured by the square foot of surface area for the same type (thickness) of panels. This includes the portion in the ground.

Section 640.07 was not changed. At the same time that section 640.06 was amended, the estimated quantities for the laminated wood noise walls included in the IFB

1. The various "Pay Items" listed corresponded to laminated wood panels of various thicknesses. Pay Item 640(1A) was for noise wall $1\frac{7}{8}$ inches thick. Pay Item (1B) was for noise wall $2\frac{11}{16}$ inches thick. Pay Item (1C) was for noise wall $3\frac{7}{16}$ inches thick. Pay Item (1D) was for noise wall $3\frac{15}{16}$ inches thick. Pay Item (1E) was for noise wall $4\frac{5}{8}$ inches thick and Pay Item (1F) was for noise wall $5\frac{1}{4}$ inches thick.

2. The noise walls or sound barriers plaintiff installed along the highway consisted of a series of pre-constructed wooden panels that were bolted together to form a continuous wall. Each panel consisted of a sandwich of three layers of boards laminated together to form sections of varying thicknesses (from $1\frac{7}{8}$ inches to $5\frac{1}{4}$ inches thick) depending on the location of the panel. Most panels were $22\frac{1}{4}$ inches wide, and they overlapped each other by one inch when bolted together. The panels varied

were altered to reflect the revised method of measurement, in section 640.06. The original and revised quantity estimates were as follows:

| Pay Item | Estimated Quantities Per Original Specifications | Estimated Quantities As Revised Per Addendum #1 |
|---|---|---|
| 640 (1A) | 5,000 sq. ft. | 5,500 sq. ft. |
| 640 (1B) | 15,500 sq. ft. | 23,000 sq. ft. |
| 640 (1C) | 7,800 sq. ft. | 11,000 sq. ft. |
| 640 (1D) | 26,000 sq. ft. | 37,000 sq. ft. |
| 640 (1E) | 8,000 sq. ft. | 10,000 sq. ft. |
| 640 (1F) | 9,500 sq. ft. | 13,000 sq. ft.[1] |

This increased the total quantity of noise wall from 71,800 to 99,500 square feet. That is an increase of 27,700 square feet. Such an increase corresponds approximately with the area of the 4,900 linear feet of noise wall that had to be buried in the ground at an average depth of $5\frac{1}{2}$ feet ($4,900 \times 5\frac{1}{2}$ equals 26,950). The remaining linear feet of barrier were to be bolted to concrete barriers as opposed to being buried. There were no changes in the IFB as to the location or length (total of 6,335 linear feet) of the sound barriers.

While plaintiff was installing the noise walls [2] along the highway in 1983, it ascertained from defendant's February 1983 pay estimate that the project engineer was only measuring the area of one side of the panels for payment purposes instead of mea-

in height from 7 to 27 feet and were installed on the differing landscape along the highway to form a wall of generally consistent height. The boards that made up the three laminated layers of the panels were glued together so that there were hollow spaces in the middle layer and spaces between the boards in a corrugated pattern which made up the side of the panel that faced away from the road. The surface of the individual panels facing the road appeared to be non-corrugated. This configuration was designed to maximize the noise absorbing capabilities of the walls. When the panels were bolted together with the one-inch overlap, one panel would protrude out toward the highway, the next would be recessed in away from the highway, and the next would protrude back out toward the highway even with the surface of the first panel. This gave the surface of the entire wall facing the road a large corrugated pattern or appearance.

suring the surface area of all six sides of the three dimensional wooden panels. (See supra, note 2.) Plaintiff assumed that such a measuring technique was an oversight, according to its interpretation of section 640.06 of the contract, and brought the error to the attention of the FHWA in a March 25, 1983, letter.

In an April 12, 1983 letter, H.C. Wieland (Wieland), Division Engineer for the FHWA, responded to plaintiff's March 25, 1983 inquiry concerning the proper manner in which to measure the noise wall panels for payment purposes. Wieland wrote in pertinent part:

By your letter dated March 25, 1983, you requested payment for noise walls by measuring six sides and referenced Contract Special Provisions, Subsection 640(6) as amended by Amendment No. 1. Subsection 640(6) provided that the noise walls were to be measured by the square foot of exposed area as seen from the roadway. The amendment changed the measurement to include that portion below ground.

Measurement in the manner you propose would more than double the quantity shown in the bid schedule. A mere rough scaling of wall dimensions from the profile sheets indicates a quantity that corresponds closely with that in the bid schedule. This combined with the fact that the industry custom is to measure only one face substantiates the intent of the specification. It is also noted that your supplier, Southern Laminators

Inc., in their January 29, 1982, letter, interpreted the contract quantities and measurements in the customary fashion. The contract must be treated as a whole, and when all the contract provisions, bid schedule, and plans are considered together, it is clear that the contract provides for payment of one face only. This is confirmed by the payment for construction signs. Therefore the March estimate will not be revised and measurement will continue as in the past.

Wieland thus refused to accept plaintiff's reading of section 640.06 and the payment measurement contention associated therewith.

On May 10, 1983, plaintiff submitted a claim to defendant for an equitable adjustment based on defendant's alleged erroneous method of measuring the area of the panels for payment purposes. On May 20, 1983, James E. Pinkowski, Regional Counsel for the Department of Transportation (DOT), acknowledged DOT's awareness of the dispute but stated that the contracting officer could not render a decision on the claim at that time due to plaintiff's failure to (1) specify a claim amount, (2) provide sufficient factual supporting data, and (3) cite the contract clause under which relief was being sought.

On September 16, 1983, plaintiff certified and submitted its claim to William G. Bartenstein (Bartenstein), the contracting officer. The certified claim was for $1,411,572.10.[3] Defendant acknowledged receipt

3. During construction certain modifications and adjustments to the wall design were made. These changes caused the actual quantities in square feet of noise walls to vary from the amended estimated quantities listed in the text above. The following chart shows the revised estimated quantities and the amounts actually utilized:

| Pay Item (See supra note 1) | Revised Estimated Quantities | Actual Quantity Installed |
|---|---|---|
| 640 (1A) | 5,500 sq. ft. | 10,166.45 sq. ft. |
| 640 (1B) | 23,000 sq. ft. | 27,239.42 sq. ft. |
| 640 (1C) | 11,000 sq. ft. | 21,893.94 sq. ft. |
| 640 (1D) | 37,000 sq. ft. | 34,397.98 sq. ft. |
| 640 (1E) | 10,000 sq. ft. | 2,442.18 sq. ft. |
| 640 (1F) | 13,000 sq. ft. | 0,000.00 sq. ft. |

Final square footage actually installed was 96,139.37 square feet as opposed to an estimated amount of 99,500 square feet, this resulting in an underrun.

of the claim in a September 29, 1983 letter. Plaintiff had previously completed performance of its contractual obligations.

On November 4, 1983, Wieland, and not Bartenstein, acting as the contracting officer issued his decision denying plaintiff's claim. Wieland stated that plaintiff "did not rely on any but the Government's intended interpretation of the method of measurement at the time of preparing its bid and entering into the contract with the Government." (Contracting officer's decision p. 9.) In denying plaintiff's claim, the contracting officer concluded: "Therefore in the absence of mistaken interpretation or ambiguity, and reliance thereon, no relief is warranted." (*Id.* at p. 9.) Subsequent to the contracting officer's denial of its claim, plaintiff filed its complaint in this court on April 9, 1984, pursuant to the direct access provision of the Contract Disputes Act. 41 U.S.C. § 609(a)(1) (1983).

II.

Plaintiff argues in this case that sections 640.06 and 640.07 of the contract govern payment for the construction of the noise walls. Plaintiff asserts that the language in 640.06, as amended, requires defendant to pay plaintiff for all six sides of the three dimensional noise wall panels. Section 640.06, as amended, stated that the "noise walls will be measured by the square foot of *surface area* for the same type (thickness) of panels" (emphasis added). Plaintiff maintains that the words "surface area" should be given their plain and ordinary meaning. *See Thanet Corp. v. United States,* 219 Ct.Cl. 75, 82, 591 F.2d 629, 633 (1979); *Timber Access Industries Co. v. United States,* 213 Ct.Cl. 648, 658, 553 F.2d 1250, 1256 (1977). Plaintiff contends that the "surface area" of the noise wall panels includes the area of all six sides of the panels, *i.e.,* the two large faces, the two sides, and the top and bottom. Plaintiff argues that the language utilized in section 640.06 should be given its plain meaning despite the subjective intent of either of the parties to the contract. *Hotpoint Co. v. United States,* 127 Ct.Cl. 402, 406, 117 F.Supp. 572, 574, *cert. denied,* 348 U.S. 820, 75 S.Ct. 32, 99 L.Ed. 647 (1954) and cases cited therein. In addition, plaintiff asserts that defendant should not be able to resort to matters outside the contract, *i.e.,* trade custom and usage, to show that the clear and unambiguous language utilized has a meaning different from its ordinary meaning. *Mountain Fir Lumber Co. v. United States,* 222 Ct.Cl. 619, 620 (1980).

Plaintiff was paid based on a measurement of the total area of the panel surface facing the road. The computation was "a simple length [linear feet] times average height." (Contracting officer's decision p. 6.) Plaintiff maintains that the proper method of measurement is the total surface area of the panels, *i.e.,* all six surfaces of the three dimensional panels. The following chart illustrates the different results in utilizing the two different methods of measurement to arrive at a payment figure.

| ITEM | AS MEASURED BY DEFENDANT | MEASURED AS PROPOSED BY PLAINTIFF | DIFFERENCE |
|---|---|---|---|
| 640 (1A) | $ 106,747.72 | $ 237,885.48 | $ 131,137.76 |
| 640 (1B) | 258,774.49 | 583,459.79 | 324,685.30 |
| 640 (1C) | 251,780.31 | 592,350.74 | 340,570.43 |
| 640 (1D) | 404,176.38 | 969,434.45 | 565,258.07 |
| 640 (1E) | 34,190.52 | 84,111.16 | 49,920.64 |
| | $1,055,669.42 | $2,467,241.62 | $1,411,572.20 |

The "As Measured By Defendant" column represents the amount actually paid plaintiff based on the area of the surface of the noise wall facing the road, including the portion underground. Pay Item 640(1F) is excluded because that particular Item was deleted.

Plaintiff's measurement method, it is to be noted, more than doubles the amount of payment when compared to the method utilized by defendant. Plaintiff submitted a bid of $1,162,100 on the six noise wall items and received only $1,055,699.42 due to reductions in the size of the noise wall. This was an underrun of $106,400.38. Plaintiff contends that despite its bid, it is entitled to an additional $1,411,572.20

Furthermore, plaintiff argues that defendant clearly contemplated paying plaintiff based on the surface area of all six sides of the noise wall panels. Defendant amended the original section 640.06, which provided that the noise walls would be "measured by the square foot of exposed wall (as seen from the roadway) of the same type (thickness) of panels," to state that the panels would be "measured by the square foot of surface area for the same type (thickness) of panels." Plaintiff asserts that defendant's deletion of the phrase "exposed area (as seen from the roadway)" and substitution of the words "surface area" evidenced a clear intent on the part of defendant to alter the means of measurement upon which to base payment for installation of the noise walls.

Defendant, on the other hand, argues that plaintiff's proffered interpretation is unreasonable given the totality of the circumstances surrounding the contract and the amendment of section 640.06. Defendant asserts that plaintiff's interpretation of section 604.06 means that defendant more than doubled the payment due to plaintiff for the installation of the noise walls without any explanation that would normally be expected under such circumstances. *See Standard Oil Co. v. United States,* 231 Ct.Cl. 112, 125, 685 F.2d 1337, 1345 (1982). Defendant also contends that plaintiff's reading of section 640.06, as amended, is inconsistent with the alterations to the estimated quantities of noise wall included in the IFB that resulted from the amendment to section 640.06. Given the rule that an "agreement must be considered as a whole, and interpreted so as to harmonize and give meaning to all of its provisions" (*Thanet Corp. v. United States, supra,* 219 Ct.Cl. at 82, 591 F.2d at 633), defendant maintains that plaintiff's interpretation is unreasonable and cannot be upheld. Defendant also contends that plaintiff behaved prior to the inception of the interpretation dispute in issue in a manner consistent with defendant's interpretation of section 640.06 which suggests that plaintiff's

under its interpretation of section 640.06 of the

intent was similar to that of defendant at the critical bidding stage. *See, e.g., Macke Co. v. United States,* 199 Ct. Cl. 552, 556, 467 F.2d 1323, 1325 (1972). *See also Aluminum Co. of America v. United States,* 2 Cl.Ct. 771, 777 (1983) (*citing State of Arizona v. United States,* 216 Ct.Cl. 221, 236, 575 F.2d 855, 863 (1978)).

Defendant also argues that if plaintiff's interpretation can be considered reasonable, such a reading of section 640.06 created a patent ambiguity in the contract. Such an ambiguity arose due to the drastic inconsistency between the estimated quantity provision in the IFB and plaintiff's interpretation of section 640.06. Defendant argues that such a patent ambiguity placed a duty upon plaintiff to inquire, prior to bidding, as to defendant's intent. *See George Hyman Constr. Co. v. United States,* 215 Ct.Cl. 70, 80–81, 564 F.2d 939, 945 (1977) and cases cited therein. *See also G.M. Shupe, Inc. v. United States,* 5 Cl.Ct. 662, 705 (1984) (contractor has duty and responsibility to have ambiguity resolved before bidding on contract). Failure to make the proper inquiry in the face of such a patent ambiguity, defendant argues, forecloses any attempt by plaintiff to recover based on its interpretation of section 640.06 at this time. *See FFR Building Specialties Corp. v. United States,* 229 Ct.Cl. 538, 539 (1981); *Beacon Constr. Co. v. United States,* 161 Ct.Cl. 1, 6–7, 314 F.2d 501, 503–04 (1963).

After reviewing the facts and relevant case law, the court agrees with defendant's position in this case. The court will initially discuss the existence of a patent ambiguity, assuming plaintiff's interpretation of section 640.06 to be reasonable. The court will then address the reasonableness of plaintiff's reading of section 640.06 based on the circumstances of this case.

Assuming plaintiff's interpretation of section 640.06 is reasonable, the result is that instead of compensating plaintiff for noise walls based on the square foot area of the panels facing the highway, including the portion under ground, defendant would

contract.

be required to compensate plaintiff for the square foot area of all six sides of the panels. This would more than double the square footage upon which plaintiff's payment would be based and would accordingly increase plaintiff's compensation *pro tanto*.

After defendant amended section 640.06, it also amended the Pay Item provision number 5, which contained the estimated quantities of wood noise wall needed, "because the method of measurement [was] revised." The amendment to this provision only increased the quantity square foot amount by 27,700 square feet (from 71,800 to 99,500 square feet). Such a figure corresponded approximately with the square foot area of the portion of the surface facing the highway of the wood panels buried in the ground, *i.e.*, 4,900 linear feet times 5½ feet (average depth panels were placed in ground). The court notes that the change in the estimated quantities for the various types of panels was not a uniform increase. The increase in estimated area apparently corresponded to the amount of each item that would be placed underground. Clearly, some of the items (panels of various thicknesses) had more buried surface area than others. The change in estimated quantities did not double the square foot area. Such a doubling of the estimated quantities would have been necessary to maintain consistency with plaintiff's interpretation of section 640.06, as amended, and Pay Item Number 5.

██ If plaintiff's interpretation of section 640.06 can be considered reasonable, then it is in direct conflict with the estimated quantities provision in the IFB. Such a drastic conflict created an ambiguity in the contract. Such an ambiguity would be patent to a knowledgeable and experienced contractor such as plaintiff. *See G.M. Shupe, Inc. v. United States, supra*, 5 Cl.Ct. at 704–05. If plaintiff interpreted the amended section 640.06 before it submitted its bid in the manner it now urges upon the court, as it claims it did, then the ambiguity that arose due to this interpreta-

tion was a patent one imposing a "duty on plaintiff to make inquiry of the contracting officer before it submitted its bid as to the meaning of the ambiguous discrepancies." *George Hyman Constr. Co. v. United States, supra*, 215 Ct.Cl. at 80–81, 564 F.2d at 945, and cases cited therein. *See also Iconco v. United States*, 6 Cl.Ct. 149, 155 n. 6 (1984), *aff'd*, 770 F.2d 179 (Fed.Cir. May 14, 1985). Plaintiff did not call this patent ambiguity to the attention of the contracting officer, and it did not make any inquiries regarding the clear conflict between the contract provisions. What constitutes the type of ambiguity sufficient to obligate plaintiff to make an inquiry, however, can be defined "only on an *ad hoc* basis by looking to what a reasonable man would find to be patent and glaring." *L. Rosenman Corp. v. United States*, 182 Ct.Cl. 586, 590, 390 F.2d 711 (1968). In the court's view, the amendment of section 640.06 under plaintiff's present interpretation would have indicated to a reasonable man the concomitant doubling of the estimated quantities provision of the contract. Since the estimated quantity figures were not so increased, the flag of patent ambiguity was unfurled by plaintiff's interpretation. It was required to call this ambiguity to the government's attention before bidding on the contract.

In addition to the rule set out in *George Hyman Constr. Co. v. United States, supra*, requiring a bidder to inquire about patent ambiguities, Section 1 of the Instructions to Bidders, SF–22, required bidders in this case detecting any problem concerning the meaning or interpretation of any provision in the IFB to bring the matter to the attention of the contracting officer in writing prior to the submission of their bids. Section 1, *supra*, also placed the burden on plaintiff to bring the discrepancy between section 640.06 and the estimated quantity Pay Item to the contracting officer's attention. *See Beacon Constr. Co. v. United States, supra*, 161 Ct.Cl. at 6, 314 F.2d at 503. The court concludes that plaintiff was presented with an obvious inconsistency or ambiguity that it was required to bring to the attention of the

contracting officer. However, plaintiff failed "to bridge the crevasse in his own favor," and it is now barred from recovering on its claim. *Id.* 161 Ct.Cl. at 7, 314 F.2d at 504.

Plaintiff argues that (1) the plain and ordinary meaning of section 640.06 as amended should control, and given that rule, there is no ambiguity, patent or otherwise, (2) any ambiguity that exists in this case is created only by defendant's assertions, and (3) the estimated quantities provision was not intended to govern the scope of the work done or the extent of the payment made for the noise walls and thus cannot be utilized to find an ambiguity.

■ It is true that language in a contract is generally to be given its plain and ordinary meaning. *Thanet Corp. v. United States, supra,* 219 Ct.Cl. at 82, 591 F.2d at 633. However, the court in *Thanet Corp.,* a case relied upon by plaintiff, also pointed out that an agreement must be considered as a whole and interpreted so as to give meaning to all its provisions. *Id.* 219 Ct.Cl. at 82, 591 F.2d at 633. *See also Systems Exploration, Inc. v. United States,* 8 Cl.Ct. 334, 337 (1985) and cases cited therein. Therefore, section 640.06 cannot be read alone in a vacuum. Reading section 640.06 in a manner consistent with plaintiff's interpretation thereof, together with the estimated quantities pay item in the IFB indicates that there was a gross inconsistency in the IFB which gave rise to an ambiguity. The concomitant difference in price for this not insubstantial part of the contract may also be considered evidence of patent ambiguity. *See Mountain Home Contractors v. United States,* 192 Ct.Cl. 16, 22, 425 F.2d 1260, 1264 (1970).

■ Plaintiff's second contention is that defendant's assertions alone cannot render section 640.06 ambiguous. It is true that contract terms are not rendered ambiguous merely because the parties disagree as to their meaning. *Southern Constr. Co. v. United States,* 176 Ct.Cl. 1339, 1361, 364 F.2d 439, 453 (1966) (as cited in *Blake Constr. Co. v. United States,* 220 Ct.Cl. 56,

60 n. 16, 597 F.2d 1357, 1359 n. 16 (1979)). However, it is not defendant's assertions in this case that create the patent ambiguity. The ambiguity arises due to the inconsistency between section 640.06, as amended, and the estimated quantity provision, as amended, resulting from plaintiff's interpretation. Plaintiff's approach to interpreting section 640.06 would leave a portion of the IFB inoperative, void, meaningless or superfluous. Such a contract interpretation violates the principle that all parts of the contract should be interpreted to give them a reasonable meaning. *Blake Constr. Co. v. United States, supra,* 220 Ct.Cl. at 60, 597 F.2d at 1359; *State of Arizona v. United States,* 216 Ct.Cl. 221, 235–36, 575 F.2d 855, 863 (1978).

■ Plaintiff's final contention in this regard is that it was not bound to perform in conformance with the estimated quantities provision. It argues that the estimated quantities provision was not intended to modify the contract's payment provisions, *i.e.,* sections 640.06 and 640.07 and thus plaintiff implicitly argues that the quantities provision cannot be read to create an ambiguity in the payment provisions. The court agrees that estimated quantities were only approximations and were only intended to be utilized for the comparison of bids. Payment was to be made only for the actual quantity of work performed. *See* section 102.04 of the Standard Specifications FP–79. However, the estimated quantities provision is a part of the contract that must be read consistently with the rest of the contract. As the court pointed out earlier, when section 640.06 was amended, the estimated quantities provision was specifically altered "because the method of measurement [was] revised." Clearly, it was intended that the estimated quantities provision was to be consistent with section 640.06, but plaintiff's interpretation would produce an inconsistency. Despite the fact that the estimated quantities provision may not control payment, it is a part of the contract to which meaning should be given and that should be read consistently with the other contract provisions. *See Thanet*

*Corp. v. United States, supra,* 219 Ct.Cl. at 82, 591 F.2d at 633.

The court concludes that plaintiff's contention that the plain and ordinary meaning interpretation of section 640.06, as amended, should control in this case is flawed. To the contrary, if such an interpretation were reasonable, reading the contract as a whole, it would create a patent ambiguity about which plaintiff had a duty to inquire. Having failed so to inquire, plaintiff cannot now recover on its claim. *See G.M. Shupe, Inc. v. United States, supra,* 5 Cl.Ct. at 705.

█ The previous discussion regarding the existence of a patent ambiguity assumed that plaintiff's interpretation of section 640.06 was reasonable. However, given the totality of the circumstances in this case and the general rule of common sense, the court finds that plaintiff's reading of that portion of the contract is not reasonable. There are several factors that support the court's conclusion that plaintiff's interpretation is unreasonable.

The first factor weighing against finding plaintiff's reading of section 640.06 reasonable is the fact, mentioned earlier, that such an interpretation would more than double the payment due to plaintiff for installing the noise walls. Presumably, such a drastic increase in compensation would be accompanied by some comment or contemporaneous record of change. *See Standard Oil Co. v. United States, supra,* 231 Ct.Cl. at 125, 685 F.2d at 1345. No such comment or record regarding such an increase in compensation exists in this case, demonstrating in part the unreasonableness of plaintiff's interpretation. *See also J.A. Jones Constr. Co.,* ASBCA No. 6220, 61 BCA ¶ 28861 at 15079 (1960) (price contended for by contractor so grossly unreasonable as to show that its interpretation of contract is unreasonable).

A second factor indicating the unreasonableness of plaintiff's interpretation of section 640.06, as discussed previously, is the fact that its interpretation renders section 640.06 inconsistent with other contract provisions. "The reasonableness of plaintiff's contractual interpretation must be evaluated in light of *all* the terms of the contract * * *." *Globe Constr. Co. v. United States,* 230 Ct.Cl. 957, 960 (1982); *State of Arizona v. United States, supra,* 216 Ct.Cl. at 235–36, 575 F.2d at 863. Not only was section 640.06 as read by plaintiff a drastic alteration of the previous section 640.06, but it was also entirely out of line with the estimated quantities pay item. The estimated quantities provision was changed "because the method of measurement [Section 640.06] [was] revised." The estimated quantities would have doubled if plaintiff's interpretation of section 640.06, as amended, were correct. A contractual instrument should be considered as a whole to give meaning to all its provisions. *Thanet Corp. v. United States, supra,* 219 Ct.Cl. at 82, 591 F.2d at 633. *See also Systems Exploration, Inc. v. United States, supra,* 337; *D. Moody & Co. v. United States,* 5 Cl.Ct. 70, 75 (1984). However, the quantities were not doubled, thus indicating the unreasonableness of plaintiff's reading of section 640.06. "Contracts must be construed with business sense as they would naturally be understood by intelligent and experienced contractors such as plaintiff." *G.M. Shupe, Inc. v. United States, supra,* 5 Cl.Ct. at 704 and cases cited therein. An experienced contractor, like plaintiff, should have perceived the inconsistency in the contract provisions and inquired of the contracting officer regarding the discrepancy.

Another factor that demonstrates the unreasonableness of plaintiff's proffered interpretation of section 640.06 is plaintiff's actions prior to its development of its present interpretation. In response to defendant's interrogatories, plaintiff explained how it arrived at its cost for performing the contract work. It stated that it utilized its historical costs for labor and equipment. Plaintiff derived material costs from published cost lists or material supplier proposals. The cost of work to be performed by subcontractors was derived from subcontractor proposals. In explain-

ing how it arrived at its costs, plaintiff continued:

> After the cost of the work was determined and appropriate contingency, overhead and profit factors were applied, the costs were distributed among the various line items with the unit prices derived *by analyzing the estimated quantities independently determined by the plaintiff* and applying a unit price which assured the plaintiff that its costs would be recovered regardless of variations from the estimated quantities. [Plf's Amended Answer to Interrogatory No. 1] [emphasis added].

In plaintiff's bid preparation documents, it is clear that plaintiff based its bid of $1,162,100 on the estimated square foot quantities set out in the IFB. It also utilized the estimated quantities to arrive at the unit prices as required by the contract. Its costs per square foot varied between $9.70 to $14.20 depending on the thickness of the panels. The court notes that $1,162,100 divided by defendant's estimated quantity of 99,500 square feet equals $11.68, which approximates the average cost, as bid by plaintiff, to install the noise walls. If plaintiff acted consistent with its present interpretation of section 640.06, as amended, *i.e.*, defendant is required to pay plaintiff based on the square foot area of all six sides of the panels, and assuming plaintiff prepared its bid in the same manner as set out in its answer to defendant's interrogatory, then it is reasonable to assume that the approximate average cost per square foot of noise wall would have been less than half the amount of $11.68. There is no reason to assume plaintiff's costs were altered by any alleged change in measuring the wood panels.[4]

In all of plaintiff's bid preparation documents, plaintiff appears to have based its bid upon the estimated quantity of 99,500 square feet (installed surface area of the noise walls facing the highway including the portion underground), or the documents at least make reference to that figure.[5] Since it appears that plaintiff acted in preparing its bid in accordance with defendant's reading of section 640.06, as amended, plaintiff at no time relied on its present interpretation of section 640.06 either in preparing its bid or performing the contract. Given those facts its present interpretation is deemed unreasonable. *See*

---

4. Defendant contends and the court agrees that plaintiff's attempt to double the amount of compensation due to it under the contract is an attempt to acquire a windfall and is entirely violative of common sense. Plaintiff submitted a bid of $1,162,100 to install the noise walls. Due to a reduction in the quantity of noise wall to be installed, plaintiff was only paid $1,055,699.32, which presumably met plaintiff's costs as estimated by it. Plaintiff now wishes to receive an additional $1,411,572.10 based on an interpretation of section 640.06 that seems at odds with its initial interpretation of the same section. This additional amount is essentially over and above plaintiff's costs for materials, labor, and its markup presumably for taxes, overhead, and profit. The court views plaintiff's proffered interpretation of section 640.06 to be an attempt to acquire a windfall, with no relation to actual costs, which the court finds to be entirely unreasonable. Plaintiff argues, however, that it is not attempting to acquire a windfall. It points out that it suffered losses on other portions of the overall contract. Plaintiff admits that it is attempting to cover those losses by profits on other line items such as this one. (plaintiff's reply brief 13–14). Even if plaintiff is trying to recoup losses suffered as the result of underbidding on other portions of the contract by increasing its profit on the noise wall portion of the deal, the court believes that plaintiff is still attempting to receive a windfall on at least a portion of its contract.

5. It appears that the subcontractor, Southern Laminators, which supplied the noise wall panels to plaintiff was paid based on the square foot area of one face of the panels before assembly. A June 18, 1982, letter from Southern Laminators to plaintiff indicated the basis of measurement to be "one side (wide dimension) of a panel" and that the subcontractor was to be paid by the square foot. Such a basis for payment is essentially the same as that utilized by defendant in paying plaintiff except plaintiff was not paid for the one-inch overlap area of the installed noise walls whereas Southern Laminators was paid for that one-inch portion. For support for the court's reference to plaintiff's contemporaneous billing practice in determining the reasonableness of plaintiff's interpretation see, *e.g.*, *Macke Co. v. United States, supra*, 199 Ct.Cl. at 556, 467 F.2d at 1325; *J.A. Jones Constr. Co.*, ASBCA No. 622, 61–1 BCA ¶ 2886 of 15073 (1960).

*Globe Constr. Co. v. United States, supra,* 230 Ct.Cl. at 960–61.

Based on the factors discussed above, it is the court's conclusion that plaintiff's interpretation of section 640.06, as amended, is unreasonable.[6] If plaintiff's interpretation of section 640.06 could have been considered reasonable, given the court's view that defendant's reading of the same section in the context of the entire agreement was reasonable, then the section would have been susceptible of two reasonable interpretations and thus an ambiguity would have existed. *See Sun Shipbuilding and Dry Dock Co. v. United States,* 183 Ct.Cl. 358, 372, 393 F.2d 807, 815–16 (1968). Plaintiff's interpretation need not have been the only reasonable one. *See Folk Constr. Co. v. United States,* 2 Cl.Ct. 681, 688 (1983); *A & K Plumbing & Mechanical, Inc. v. United States,* 1 Cl.Ct. 716, 721 (1983). If a non-patent ambiguity had existed then the doctrine of *contra proferentem* would require the court to construe the ambiguous term against the drafter of the contract (defendant) and in favor of the other party (plaintiff). *See S.W. Aircraft, Inc. v. United States,* 213 Ct.Cl. 206, 213, 551 F.2d 1208, 1212 (1977); *Sun Shipbuilding and Dry Dock Co. v. United States, supra,* 183 Ct.Cl. at 372–73, 393 F.2d at 816. However, since the plaintiff's interpretation of section 640.06 is unreasonable, the doctrine of *contra proferentem* is inapplicable and defendant's reasonable interpretation of the contract is controlling. *See id.* 183 Ct.Cl. at 373, 393 F.2d at 816; *WPC Enterprises, Inc. v. United States,* 163 Ct.Cl. 1, 6–7, 323 F.2d 874, 876–77 (1963) (as cited in *Blount Bros. Constr. Co. v. United States,*

171 Ct.Cl. 478, 495–96, 346 F.2d 962, 975 (1965)). *See also Straga v. United States,* 8 Cl.Ct. 61, 68 (1985). Essentially, the court concludes that given the unreasonableness of plaintiff's interpretation of the contract and reading the contract as a whole, including section 640.06 prior to amendment, there is no ambiguity in the contract. In that case, the doctrine of *contra proferentem* is inapplicable and defendant's interpretation, the only reasonable one proffered, must control. *See Blake Constr. Co. v. United States,* 220 Ct.Cl. 56, 60 n. 16, 597 F.2d 1357, 1359 n. 16 (1979).

III.

For the reasons stated in the above discussion, the court grants defendant's cross-motion for summary judgment and denies plaintiff's motion for summary judgment, with plaintiff's complaint to be dismissed.

---

6. The court stated in an early phase of this case that general trade usage might bear on the interpretation to be accorded section 640.06. *Cherry Hill Sand & Gravel Co. v. United States,* 7 Cl.Ct. 357, 361 (1985) (citing *J.A. Jones Constr. Co.,* ASBCA No. 6220, 61–1 BCA ¶ 2886 (1960)). *See also Anthony P. Miller, Inc. v. United States,* 191 Ct.Cl. 292, 305, 422 F.2d 1344, 1352 (1970). Following up on this observation, defendant attached to its brief payment specifications from the Illinois and Minnesota Departments of Transportation showing that they pay for noise walls based on the square foot area of one side of the wall. Though those payment provisions are contrary to plaintiff's interpretation of section 640.06, the court attributes no weight to defendant's trade usage argument as presented, due to the limited breadth of the evidence introduced to support its argument and due to the fact that the two specifications introduced by defendant post-dated the opening of the bids in this case. Plaintiff advises, by affidavit, that it was unaware of any such trade practice. At best they raise issues of fact that are inappropriate for consideration in a summary judgment disposition.