856 F.2d 202
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
The UNITED STATES, Appellant,
v.
GUY F. ATKINSON COMPANY, Appellee.
 No. 88-1089.
 United States Court of Appeals, Federal Circuit.
 Aug. 24, 1988.
 
 Before NIES, PAULINE NEWMAN and MICHEL, Circuit Judges.
 PER CURIAM.
 
 
 1
 The United States appeals the decision of the Corps of Engineers Board of Contract Appeals, Guy F. Atkinson Company, ENG BCA No. 4891, 87-3 BCA p 20,063 (1987), awarding payment to the Atkinson Company at the rock excavation rate for the stipulated quantity of rock excavated, in the amount of $3,535,559.50, plus interest under the Contract Disputes Act of 1978. The United States also appeals the Board's earlier decision as to entitlement. Guy F. Atkinson Company, ENG BCA No. 4891, 86-1 BCA p 18,555 (1985). We affirm.
 
 
 2
 We also hold that both decisions are properly appealable at this time and deny Atkinson's motion for partial dismissal.
 
 OPINION
 
 3
 We have considered the arguments presented on both sides of the issues of both entitlement and quantum, and affirm the decisions of the Board on the basis of the Board's opinions. The Board's findings of fact are supported by substantial evidence, 41 U.S.C. Sec. 609(b) (1982), and we discern no error of law.
 
 
 4
 On the motion for partial dismissal, we need not decide whether or not appeal could have been taken directly from the 1985 determination of entitlement. Piecemeal appeal prior to determination of quantum is not required, and appears particularly unnecessary in this case where the parties had already stipulated, at the time of the entitlement decision, as to the amount of rock that was removed. Neither Dewey Electronics Corp. v. United States, 803 F.2d 650 (Fed.Cir.1986) nor Teller Environmental Systems, Inc. v. United States, 802 F.2d 1385 (Fed.Cir.1986) requires otherwise, and indeed Teller directly supports the procedure here followed.
 
 
 5
 MICHEL, Circuit Judge, dissenting.
 
 
 6
 I respectfully dissent. The board found that "[t]he physical properties of materials classified as 'rock' were not set forth in the contract documents." The board further found that the contract documents were "silent" as to whether the terms "sandstone" and "shale" were being used in the geologic sense or in the engineering sense. Additionally, the contract documents contained conflicting elevations at which "rock" was likely to be found. In my view, if the contract documents were silent or ambiguous on the definition of rock, the properties of rock, the quantity of rock, and the elevation of the rock to be excavated, the contract documents contained patent ambiguities which should have prompted Guy F. Atkinson Company (GFA) to inquire before bidding so as to resolve the ambiguities. See Gelco Builders & Burjay Construction Corp. v. United States, 369 F.2d 992 (Ct.Cl.1966); Cherry Hill Sand & Gravel Co. v. United States, 8 Cl.Ct. 757 (1985).
 
 
 7
 Actually, since the government had estimated in the bid documents that there would be 38,000 cubic yards of rock excavation, it should have been clear how the government was interpreting rock and at what elevation the government expected such rock to be encountered. As the board noted, the cross section drawings accompanying the bid documents* depicted the upper three strata at the site as various formations of interlayered and stratified sand, silt, and clay, which indicate "overburden," not rock. The cross sections further showed the "top of rock" as a stratum described as "Shale I," at expected Elevations ranging from -25 to -32. However, although finding that the boring logs in the area of the tailrace canal excavation "provided insufficient information from which the quantity of rock excavation could be determined," the board also found that the only four borings in the tailrace canal area encountered refusal (impenetrability due to hardness) between Elevations +17.6 and +26. Finally, the board found that GFA had concluded, based on those four borings, that all underlying material "was payable as rock excavation." At the very least, the discrepancy between the four borings in the tailrace canal area indicating rock at elevations near +20 and the cross sections of the geologically similar adjacent area indicating rock near Elevation -25 imposed a duty on GFA to recognize the patent ambiguity. It should have inquired as to the definition of and expected location of "rock" as it affected excavation payment quantities. Because it did not, GFA cannot, in my view, prevail. I therefore dissent.
 
 
 
 *
 Although the cross sections were of the powerhouse area, the board further found that "[g]eologically, the nature of the materials in the tailrace canal area was similar to the nature of the materials in the powerhouse area" and that "[t]he nature of the material [in the tailrace canal area] was, in fact, as expected by [GFA] when it prepared its bid on this contract." Furthermore, GFA accepted payment at the overburden rate for the very materials when excavated from the powerhouse area that it seeks payment at the higher "rock" rate in the tailrace area