THE TEXAS COMPANY *v.* HOGARTH SHIPPING COMPANY, LTD., OWNER OF THE STEAMSHIP BARON OGILVY, ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 555. Argued January 26, 27, 1921.—Decided June 6, 1921.

1. A voyage charterparty for a vessel to be named, with no provision for a substitution, under which a vessel has been selected, is to be treated thenceforth as a contract for that particular vessel. P. 627.

2. Error in permitting the British Ambassador to intervene, as *amicus curiæ*, and to present a certificate avowing the requisition of the ship here in question as an act of his government, *held* not prejudicial. P. 629.

3. A British ship, owned by a British corporation, was subject to requisition by the British Government for war purposes while in British waters preparing for service under a voyage charterparty ·· made in this country with an American corporation. Pp. 628, 631.

4. A telegraphic requisition treated as binding in the practice of the British Government, and followed by use of the ship as a government transport and compensation of the owner therefor, *held* valid. P. 628.

5. Where a ship is rendered unavailable for the performance of a charterparty by a valid requisition of government, not invited by the owner or provided for in the contract, for a service likely to extend (which in this case did extend) beyond the time for the projected charter voyage, the owner is excused from performance. P. 629.

6. The contract must be deemed to have been entered into subject to an implied condition that, in such an event, it should be at an end and the parties absolved from further liability under it. P. 631.

267 Fed. Rep. 1023, affirmed. ·

CERTIORARI to review a decree of the Circuit Court of Appeals affirming a decree of the District Court in admiralty. The facts are stated in the opinion, *post*, 625.

*Mr. John W. Griffin* for petitioner:

In the absence of a restraints-of-princes clause, the shipowner's obligation under the charterparty was absolute, and prevention by foreign law was not a defense.

Where a shipowner enters into an absolute covenant to carry a cargo, without protecting himself by exceptions, he is bound to perform it or to pay damages. An examination of the charter in suit shows that it contains no exception whatever applicable to the situation. *Spence* v. *Chodwick*, 10 Q. B. 517; *Jacobs* v. *Credit Lyonnais*, 12 Q. B. D. 589; *Howland* v. *Greenway*, 22 How. 491; *The Harriman*, 9 Wall. 161; *Blight* v. *Page*, 3 Bos. & P. 295; *Barker* v. *Hodgson*, 3 Maule & S. 267; *Northern Pacific*

*Ry. Co.* v. *American Trading Co.*, 195 U. S. 439; *Ashmore* v. *Cox*, L. R. [1899] 1 Q. B. D. 436; *Blackburn Bobbin Co.* v. *Allen*, [1918] 1 K. B. 540; *Sun Printing Association* v. *Moore*, 183 U. S. 642; *Carnegie Steel Co.* v. *United States*, 240 U. S. 156; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Hoyt*, 149 U. S. 1, 14; *Columbus Ry. Co. v. Columbus*, 249 U. S. 399, 412; *Dermott* v. *Jones*, 2 Wall. 1; *United States* v. *Gleason*, 175 U. S. 588, 602; *Jones* v. *United States*, 96 U. S. 24; *Berg* v. *Erickson*, 234 Fed. Rep. 817; *Rederiaktiebolaget Amie* v. *Universal Transportation Co.*, 250 Fed. Rep. 400; *Richards* v. *Wreschner*, 174 App. Div. 484; *Aktieselskabet Frank* v. *Namqua Copper Co.*, 36 T. L. R. 438. *Furness, Withy & Co.* v. *Rederi Banco* [1917] 2 K. B. 873, distinguished.

The law has long been settled to the effect that, where there is an absolute obligation, difficulty or even impossibility of performance is no defense, except in cases of personal disability preventing performance of a contract for personal service, destruction of the subject-matter upon the continued existence of which the contract depends, and prohibition by domestic law.

The ship did not *cease to exist*, any more than if she had been delayed by stranding or by collision, or by any other obstacle. She was merely subjected to a restraint (assuming that the requisition was valid) of a kind not excepted in the charter and not permanent in its nature. Such a situation cannot be treated as an instance of destruction of the subject-matter of the contract. It is simply a case where performance has been rendered impossible for the moment by foreign law.

The case presents merely another instance of prevention by foreign law of the performance of an American contract—the same situation which has been so often and so uniformly dealt with by the courts both of this country and of England. 8 Elliott on Contracts, par. 1891; 2 Parsons, Contracts, 9th ed., p. 828; Leake, Contracts,

6th ed., p. 510; Wald's Pollock on Contracts, 3d ed., p. 530; Williston, Sales, § 661; Scrutton on Charter-Parties, 9th ed., p. 11; *Richards* v. *Wreschner*, 174 App. Div. 484; *Kirk* v. *Gibbs*, 1 H. & N. 810; *Barker* v. *Hodgson*, 3 M. & S. 267; *Gates* v. *Goodloe*, 101 U. S. 612; *Benson* v. *Atwood*, 13 Maryland, 20; *Clifford* v. *Watts*, L. R. 5 C. P. 577, 586; *Hore* v. *Whitmore*, 2 Cowp. 784; *Atkinson* v. *Ritchie*, 10 East, 530; *Blight* v. *Page*, 3 B. & P. 295; *Sjoerds* v. *Luscombe*, 16 East, 201; *Jacobs* v. *Credit Lyonnais*, 12 Q. B. D. 589; *Blackburn Bobbin Co.* v. *Allen*, [1918] 1 K. B. 540; *Trinidad Shipping Co.* v. *Alston & Co.*, [1920] A. C. 888; *Duff* v. *Lawrence*, 3 Johns. Cas. 162; *Holyoke* v. *Depew*, 2 Ben. 334; *Beebe* v. *Johnson*, 19 Wend. 500; *Ye Seng Co.* v. *Corbitt*, 9 Fed. Rep. 423; *Tweedie Trading Co.* v. *McDonald Co.*, 114 Fed. Rep. 985; *Spence* v. *Chodwick*, 10 Q. B. 517; *Swayne & Hoyt* v. *Everett*, 255 Fed. Rep. 71; *Taylor* v. *Taintor*, 16 Wall. 366.

The foregoing authorities indicate what has always been considered clear law—that, in the absence of an exception in the contract, the interference of a foreign government preventing the performance of the contract is not a legal excuse. This is well settled both in England and in this country.

The District Court sought to bring the present case within the authorities by calling it a case where the vessel had become non-existent. This is a mere figure of speech. It might equally well be said that, whenever the act of a foreign government prevents the loading of a cargo, that cargo is non-existent, and yet in case after case it has been held that liability exists under such circumstances. Indeed, any case of impossibility might be stated in the same sort of figurative language. Where there is truly destruction of the subject-matter, a peculiar situation is created, with which the law usually deals by declaring, as the fairest solution, that the contract is annulled. But where, the subject-matter being intact, an obstacle arises to performance by one party, the question is: Is the nature

of the obstacle such that, under the law or according to the provisions of the contract, the default is excused?

There was no frustration of the charter. If the doctrine of frustration is applied to cases where performance is prevented by foreign law, then either the general rule must be overturned (which is inconceivable) or else such cases must be treated as exceptional, and a new rule of law must be established to cover them.

The doctrine of frustration appears to be an effort to correct what, in some cases, has been regarded as the injustice of enforcing a contract under circumstances fundamentally different from those which the parties foresaw or could reasonably have been expected to foresee. The court in effect makes for the parties a new contract; or, perhaps more accurately, declines to enforce, for equitable reasons, the contract which the parties themselves have made.

Only in a case of the plainest need should such a remedy be applied, and it should never be applied to a case where the parties must have had the contingency in contemplation and simply failed to provide for it. Under those circumstances, it is submitted, no court can annul this or any other contract.

The so-called doctrine of frustration is really new in name rather than in nature. Nearly all the cases are simply instances of the well recognized types of impossibility. No court has held a contract frustrated unless the obstacle clearly appeared to be such as necessarily to postpone the performance of the contract beyond the time when it would be fair or reasonable to require the parties to perform it. Citing and applying or distinguishing the following: *Allanwilde Transport Corporation* v. *Vacuum Oil Co.*, 248 U. S. 377; *The Kronprinzessin Cecilie*, 244 U. S. 12; *Columbus Railway Co.* v. *Columbus*, 249 U. S. 399; *The Claveresk*, 264 Fed. Rep. 276; *The Isle of Mull*, 257 Fed. Rep. 798; *Lewis* v. *Mowinckel*, 215 Fed. Rep. 710; *Admiral*

*Shipping Co.* v. *Weidner & Co.,* [1916] 1 K. B. 429; *Jackson* v. *Union Marine Ins. Co.,* L. R. 8 C. P. 572; L. R. 10 C. P. 125; *Bank Line* v. *Capel & Co.,* [1919] A. C. 435; *Tamplin S. S. Co.* v. *Anglo-Mexican Co.,* [1916] 2 A. C. 397; *Geipel* v. *Smith,* L. R. 7 Q. B. 404; *Scottish Navigation Co.* v. *Stouter & Co.,* [1917] 1 K. B. 222; *Countess of Warwick S. S. Co.* v. *Nickel Societe Anonyme,* [1918] 1 K. B. 372; *Modern Transp. Co.* v. *Duneric S. S. Co.,* [1917] 1 K. B. 370; *Chinese Mining Co.* v. *Sale,* [1917] 2 K. B. 599; *Millar & Co.* v. *Taylor & Co.,* 32 T. L. R. 161; L. R. [1916] 1 K. B. 402; *Austin Baldwin & Co.* v. *Turner & Co.,* 36 T. L. R. 769; *Lloyd Royal Belge* v. *Stathatos,* 33 T. L. R. 390; 34 T. L. R. 70; *Blackburn Bobbin Co.* v. *Allen Co.,* [1918] 1 K. B. 540; 2 K. B. 467; *Hudson* v. *Hill,* 2 Asp. M. C. 278; *Jones* v. *Holm,* 2 Ex. 335; *The Progreso,* 50 Fed. Rep. 835; *The Star of Hope,* 1 Hask. 36; *Hadley* v. *Clarke,* 8 Term. Rep. 259; *The Patria,* L. R., 3 A. & E. 436; *Hurst* v. *Usborn,* 25 L. J. C. P. 208; *Assicurozioni Generali & Co.* v. *Bessie Morris S. S. Co.,* [1892] 2 Q. B. 652; *Clark* v. *Massachusetts Fire Insurance Co.,* 2 Pick. 104; *In re Shipton, Anderson & Co.,* [1915] 3 K. B. 676; *Nickoll & Knight* v. *Ashton, Edridge & Co.,* [1901] 2 K. B. 126; *Taylor* v. *Caldwell,* 3 B. & S. 826; *Metropolitan Water Board* v. *Dick, Kerr & Co.,* [1918] A. C. 128.

In order to succeed under the facts of this case, the owners must establish that the mere fact of requisition, *ipso facto* and without more, as matter of law, terminated the charter. Without an exception, without proof of the probable length of the requisition, without any facts in the record from which the court can reach a conclusion about its probable length, there is nothing here but the mere fact that the vessel was requisitioned. No case has ever held that this alone is enough to accomplish frustration; numerous cases have held the contrary.

The alleged requisition was not a legally valid requisition. The diplomatic officers of a foreign government cannot, by

*ex parte* statements, preclude the courts of the United
States from ascertaining the true facts with regard to it;
nor should the courts of the United States receive or act
on such statements, at least unless made through and
with the sanction of the Department of State.

Whether or not the requisition was valid, the employ-
ment of the *Baron Ogilvy* from April to October, 1915, was
not under any requisition but under a voluntary charter,
and the certificate of the British Embassy should not be
construed as contradicting this undisputed fact.

The respondents, after the happening of the alleged
requisition, did not make efforts to secure the release of
the vessel or to substitute other tonnage.

    *Mr. John M. Woolsey* for respondents.

    *Mr. Frederic R. Coudert* and *Mr. Howard Thayer Kings-
bury*, by leave of court, filed a brief on behalf of the British
Embassy as *amicus curiæ*.

    MR. JUSTICE VAN DEVANTER delivered the opinion of
the court.

    This is a suit in admiralty to recover damages for an
alleged breach of a voyage charterparty entered into in
New York, February 6, 1915, between a British corpo-
ration, which owned the *Baron Ogilvy* and other freight
ships, and a Texas corporation, which was engaged in
shipping and marketing petroleum products. The charter-
party did not name a particular ship as the subject of the
hiring, but required that one of a certain type be desig-
nated from among the ships of the British company, on
or before March 15. In due time that company named
the *Baron Ogilvy* and the Texas company assented. The
intended voyage was from a port in Texas to another in
South Africa with a full cargo of refined petroleum in cases.
The ship was to be tendered at the initial port ready to
load between April 15 and May 15, 1915, and in case of

default the Texas company was given the option of can-. celing or maintaining the charterparty.  If the vessel was then at that port, the option was to be exercised at once and if she was not then there, it was to be exercised within twenty-four hours after her arrival.  There was no clause expressly excepting restraints of princes, etc. April 10, 1915, the *Baron Ogilvy*, while in British waters and being provisioned for the intended voyage, was requisitioned by the British Government and pressed into its war service, in which she continuously was re- tained until October 20, following.  On April 12 the British company notified the Texas company that the vessel had been requisitioned and therefore would not be available to carry out the charterparty.  The Texas company thereupon procured another vessel to make the voyage at the time intended, but at an increased freight rate, and subsequently brought this suit against the British company on the theory that the latter had broken the charterparty and was liable in damages for the difference between the rate which it was to receive and that actually paid to the other vessel.  On the final hearing the District Court rendered a decree for the respondent, the principal grounds of the decision being (a) that when in accordance with the terms of the charter- party the *Baron Ogilvy* was named as the ship to make the voyage the contract became an ordinary voyage charterparty for that ship, and none other, and (b) that that ship, before the time for the voyage, was taken *in invitum* by the owner's government for war use for a period likely to extend beyond the time for the intended voyage and that this dissolved the charterparty and excused the owner from furnishing the ship.  265 Fed. Rep. 375.  The decree was affirmed by the Circuit Court of Appeals, 267 Fed. Rep. 1023; and a writ of certiorari brings the case here.  254 U. S. 625.

We agree that after the designation of the *Baron Ogilvy*,

conformably to a provision in the charterparty, every
element of an ordinary voyage charterparty for a par-
ticular ship was present.  It was then as if that vessel
had been named at the outset.  And, as there was no pro-
vision for substituting another ship, there was no obli-
gation on the part of the owner to furnish, nor on the
part of the charterer to accept, another.  *Nickoll & Knight*
v. *Ashton, Edridge & Co.*, [1901] 2 K. B. 126, 131.  The
contract related to a particular ship just as it related to
a particular voyage.  Neither could be changed without
departing from the contract, which could not be done
without the consent of both parties.

The libelant challenges the good faith of the owner and
seeks by taking mere fragments of the evidence here and
there to show that the owner invited the requisition,
welcomed it as promising a better return than the charter-
party, and in effect voluntarily turned the vessel over to
the government.  But the fragments to which attention
is invited must be read with the context and all the evi-
dence must be considered.  When this is done it becomes
very plain that there is no basis for the challenge.  The
owner made the usual preparations for complying with
the charterparty, earnestly sought to prevent the req-
uisitioning of the vessel, urged the existence of the
charterparty as a reason for leaving her free, and respected
the requisition, when made, because no other course was
reasonably open.  It may not be material, but in fact the
charterparty gave promise of a better return and called
for a service which would be less hazardous.  The vessel
was taken by the government for the use to which she
was subjected and after the taking the owner agreed to
furnish certain additional facilities by reason of which a
higher compensation was obtained than otherwise would
have been allowed.  Beyond this the owner was accorded
no voice in the matter.

As the ship was British and in British waters and the

owner was a British corporation the power of the British
Government to requisition the ship is beyond question.
But the libelant insists that those who assumed to exert
this power did not proceed in the mode prescribed and
therefore that the requisition was invalid.   The facts
adequately proved are as follows:  A Royal Proclama-
tion of August 3, 1914, authorized and empowered the
Lords Commissioners of the Admiralty "by warrant under
the hand of their Secretary " "to requisition and take
up " British vessels within British waters for use as trans-
ports and auxiliaries.   The *Baron Ogilvy* was requisitioned
by an order of the Lords Commissioners and the order
was communicated to the owner by a telegram signed
"Transports " and saying:  "SS. *Baron Ogilvy* is requisi-
tioned under Royal Proclamation for government service."
The telegram was sent by the Assistant Director of Mili-
tary Sea Transports, the officer through whom requisi-
tioning orders were executed.   This was the usual mode
of communicating such orders.   Formal warrants never
were issued.   Generally, the telegraphic communication
was followed, after a time, by a letter of like import bear-
ing a block (printed) signature of the Secretary; but in
this instance, through an error in office routine, no letter
was sent.   These letters were intended to be corroborative,
but were not deemed essential; and in actual practice the
Lords Commissioners and those who executed their orders
proceeded on the theory that the ship was taken when
the order was received by the owner, however the order
was communicated, and that a telegraphic communication
of it was effective and must be obeyed.   Indeed, the evi-
dence is that if the telegraphic order was not obeyed the
vessel would be taken by force.   The owner here—six
of whose ships had been requisitioned theretofore—so
understood the practice and respected the order.   It does
not appear that the government at any time or in any
way disapproved of the practice, but does appear that in

this instance the government treated the telegraphic order as effective by using the ship as a transport for more than six months and compensating the owner accordingly. In these circumstances, the contention that the requisition was invalid is quite untenable. Whether in different circumstances it could and should be pronounced invalid here we need not consider. See *Underhill* v. *Hernandez,* 168 U. S. 250; *American Banana Co.* v. *United Fruit Co.,* 213 U. S. 347; *Oetjen* v. *Central Leather Co.,* 246 U. S. 297, 303, 304; *Ricaud* v. *American Metal Co.,* 246 U. S. 304, 309; *Northern Pacific Ry. Co.* v. *American Trading Co.,* 195 U. S. 439, 467–468.

In the District Court the British Ambassador was permitted to intervene as *amicus curiæ,* object to the adjudication of the libelant's claim and present a certificate avowing that the requisition was a governmental act. Complaint is made of this. The permission was improvidently granted, as was afterwards indicated by this court in other cases. *Ex parte Muir,* 254 U. S. 522; *The Pesaro,* 255 U. S. 216. But the libelant was not prejudiced, for the intervention and certificate ultimately were not considered and the decree was rested on the evidence otherwise presented.

Finally, the libelant insists that the requisition, even if valid and not invited by the owner, did not operate to dissolve the charterparty or to excuse the owner from performing it. The courts below held otherwise, and we think rightly so.

It long has been settled in the English courts and in those of this country, federal and state, that where parties enter into a contract on the assumption that some particular thing essential to its performance will continue to exist and be available for the purpose and neither agrees to be responsible for its continued existence and availability, the contract must be regarded as subject to an implied condition that, if before the time for performance

and without the default of either party the particular
thing ceases to exist or be available for the purpose, the
contract shall be dissolved and the parties excused from
performing it. *Taylor* v. *Caldwell*, 3 Best & Smith, 826,
839; *In re Shipton, Anderson & Co.* [1915] 3 K. B. 676;
*Horlock* v. *Beal* [1916] 1 A. C. 486, 494, 496, 512; *Bank
Line, Ltd.*, v. *Arthur Capel and Co.* [1919] A. C. 435, 445;
*The Tornado*, 108 U. S. 342, 349–351; *Chicago, Milwaukee,
& St. Paul Ry. Co.* v. *Hoyt*, 149 U. S. 1, 14–15; *Wells* v.
*Calnan,* 107 Massachusetts, 514; *Butterfield* v. *Byron*, 153
Massachusetts, 517; *Dexter* v. *Norton*, 47 N. Y. 62; *Clarks-
ville Land Co.* v. *Harriman*, 68 N. H. 374; *Emerich Co.* v.
*Siegel, Cooper & Co.*, 237 Illinois, 610. The principle
underlying the rule is widely recognized and applied to
various classes of contracts. *The Kronprinzessin Cecilie*,
244 U. S. 12, 22–24. But, of course, it does not apply where
the risk is fully covered by a term of the contract, nor
where performance is not practically cut off but only
rendered more difficult or costly. *Columbus Railway,
Power & Light Co.* v. *Columbus*, 249 U. S. 399, 410, *et seq.*
Perhaps the oldest and most familiar application of the
principle is to contracts for personal service, where per-
formance is prevented by death or illness. *Robinson* v.
*Davison*, (1871) L. R. 6 Exch. 269; *Spalding* v. *Rosa*, 71
N. Y. 40. Another application widely recognized is where
a ship chartered for a voyage, after the date of the charter-
party and before the time for the voyage, is accidentally
destroyed by fire, lost at sea, or injured in such degree as
not to be available for the service. *The Tornado, supra,*
was a suit on a contract of affreightment where the ship,
before beginning the voyage, was accidentally burned
and thereby prevented from undertaking it. This court
held that the contract was dissolved, saying, p. 349:

"We are of opinion that by the disaster which occurred
before the ship had broken ground or commenced to earn
freight, the circumstances with reference to which the

contract of affreightment was entered into were so altered by the supervening of occurrences which it cannot be intended were within the contemplation of the parties in entering into the contract, that the shipper and the underwriters were absolved from all liability under the contract of affreightment. The contract had reference to a particular ship, to be in existence as a seaworthy vessel and capable of carrying cargo and earning freight and of entering on the voyage. All the fundamental conditions forming part of the contract of the ship-owner were wanting at the time when the earning of freight could commence."

Here the ship, although still in existence and entirely seaworthy, was rendered unavailable for the performance of the charterparty by the requisition. By that supervening act she was impressed into the war service of the British Government for a period likely to extend—and which as it turned out did extend—long beyond the time for the charter voyage. In other words, compliance with the charterparty was made impossible by an act of state, the charterer was prevented from having the service of the ship and the owner from earning the stipulated freight. The event apparently was not anticipated and there was no provision casting the risk on either party. Both assumed that the ship would remain available and that was the basis of their mutual engagements. These, we think, must be regarded as entered into on an implied condition that, if before the time for the voyage the ship was rendered unavailable by such a supervening act as the requisition, the contract should be at an end and the parties absolved from liability under it.

That the charterparty was entered into in this country is not material. The important consideration is that it became impossible of performance through a supervening act of state which operated directly on the ship and the parties could not avoid.

*Decree affirmed.*