## CARVER et al. v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

Circuit Court of Appeals, Second Circuit. October 29, 1928.

No. 13.

Bonynge & Barker, of New York City (Frank I. Tierney, of New York City, of counsel), for plaintiffs in error.

Charles H. Tuttle, U. S. Atty., of New York City (Edgar G. Wandless and George Biddle, Sp. Asst. U. S. Attys., both of New York City, of counsel), for defendant in error.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). It is difficult to understand upon precisely what theory the plaintiffs base their alleged cause of action. Before the

District Court they took the position that the defendant requisitioned their contract with the Chester Shipbuilding Company, but that they were nevertheless liable to the latter for nonperformance of it. Thereupon the court held that there was no cause of action, because a requisition of the plaintiffs' contract would have furnished a perfect defense against any claim by the Chester Shipbuilding Company, and plaintiffs' allowance of the deduction from their open account was equivalent to a voluntary payment. There is no escaping this conclusion, if the premise be accepted. But the facts do not warrant the conclusion that plaintiffs' rights under its contract with Chester Shipbuilding Company were requisitioned. Plaintiffs' rights were to receive the purchase price upon delivery of the sets of chains. The defendant had no desire to appropriate the plaintiffs' rights to receive money. Anchor chains were what defendant wanted. What it requisitioned was the right of Chester Shipbuilding Company to receive such chains from the plaintiffs upon paying them the contract price.

Before us plaintiffs' theory seems to be that defendant requisitioned plaintiffs' contracts with British manufacturers for the purchase of the chains. On October 1, 1917, defendant wrote plaintiffs that it had requisitioned the hulls for which the Chester Shipbuilding Company had ordered chains from the plaintiffs, and asked for information as to when and from whom the plaintiffs were to get the chains. Correspondence ensued, culminating in defendant's letter of October 20, 1917, which states:

"With reference to the third paragraph of your letter, it is not our desire to take over your contract for purchases, but we are compelled to do so inasmuch as the British government have refused to allow chain cable to leave England unless it is consigned to the Emergency Fleet Corporation and that we give assurances that this chain cable is for ships owned, controlled and operated by the United States government.

"With reference to the orders which you have placed abroad, we have sent to our representative in London as much information as we could obtain from you regarding same. We hope to hold same in force and to the best of our ability carry out the contracts which you agreed to, but under the existing circumstances you could not have obtained this chain without it being consigned to this corporation.

"Will you kindly give us the prices at which you sold this chain and the prices at which you purchased same abroad, with the name of the manufacturer and the number of the hull for which same is intended."

It is possible that this letter constituted a requisition (as plaintiffs evidently thought it did, in view of their subsequent letters) of plaintiffs' orders (or contracts, assuming the orders to have been accepted) for purchase of the chains from British manufacturers. We need not decide whether such contracts were requisitioned. If they were, such requisition would have frustrated plaintiffs' contract with Chester Shipbuilding Company and furnished a complete defense to any action by it for nondelivery of the chains. Omnia Commercial Co. v. United States, 261 U. S. 502, 511, 43 S. Ct. 437, 67 L. Ed. 773; Texas Co. v. Hogarth Shipping Co., 256 U. S. 619, 41 S. Ct. 612, 65 L. Ed. 1123; Re Shipton & Co. [1915] 3 K. B. 676. It is conceded that any theory of plaintiffs' action must presuppose legal liability of plaintiffs to Chester Shipbuilding Company. Plaintiffs' suit is not framed to recover compensation from the United States for property expropriated. See Buffalo Union Furnace Co. v. U. S. S. B. E. Fleet Corp., 291 F. 23, 28 (C. C. A. 2).

If there was no requisition of plaintiffs' contracts of purchase, then the only theory remaining to plaintiffs is that defendant unlawfully interfered with and prevented their performance of their contract with Chester Shipbuilding Company. The contention appears to be that defendant's agents wrongfully prevented plaintiffs from getting their orders for chain filled by British manufacturers. Passing the legal question whether the defendant would be responsible for such wrongful acts of its agents—see Federal Sugar Refining Co. v. U. S. S. Equalization Board, 268 F. 575 (D. C. S. D. N. Y.)—the evidence is insufficient to establish any such wrongful interference. As stated in defendant's letter of October 17th, above quoted, the British government refused to allow chain cable to leave England unless consigned to the Emergency Fleet Corporation. Export permits had to be secured from what was known as the priority panel. The defendant, by Maj. Bourke, wrote Capt. Tobey, defendant's foreign representative, to endeavor to obtain such permits for plaintiffs' orders.

The real basis of plaintiffs' complaint is that Capt. Tobey did not make all the effort he should. He took the position on November 7, 1917, that he could not, until after the first of the new year, request the panel to release more chains than they had already released, and that an immediate request would

only invite disapproval. Whether he committed an error of judgment in not promptly requesting permits for plaintiffs' orders, and whether the defendant would be responsible for such an error of judgment, we need not stop to consider. There is no proof that, if he had presented the request, plaintiffs would have gotten their chains. After their orders were placed, the market price of chain increased. On November 15, 1917, Thomas & Strachan wrote plaintiffs:

"We would dearly like to compel the makers to carry out the orders at the prices we have booked them at, instead of which, we suppose that even if we now got permits the makers would refuse to supply the chains."

The inference is that the orders had not been accepted at a fixed price, and we find no proof in the record that plaintiffs had any binding contract with any British manufacturer. Nor is there evidence that plaintiffs could have delivered the chain to Chester Shipbuilding Company, had the defendant done nothing, nor ever even communicated with plaintiffs respecting the chain. The fact that plaintiffs had previously been able to obtain English chain is no evidence that they could have done so after the formation of the priority panel. Indeed, Capt. Tobey testified they could not. If, as plaintiffs contend, the defendant suggested to Chester Shipbuilding Company that it charge plaintiffs with the extra cost of chains procured elsewhere, this was no tort, for, if the charge was a valid claim, plaintiffs were not injured, and, if invalid, they were not legally bound to pay it. On the theory of wrongful interference, the plaintiffs proved no case.

The judgment is affirmed.