**INSITUFORM TECHNOLOGIES, INC. and INA Acquisition Corp., Plaintiffs,**

v.

**PER AARSLEFF A/S, Aarsleff Rörteknik AB, and Aarsleff Oy, Defendants.**

No. 05–2414 JPM/dkv.

United States District Court, W.D. Tennessee, Western Division.

Feb. 22, 2008.

Buckner Wellford, Jay A. Ebelhar, Baker Donelson Bearman Caldwell & Berkowitz, Memphis, TN, Gary Mayes, Jan Paul Miller, Jill Fleming, Maria G. Zschoche, Thompson Coburn LLP, St. Louis, MO, for Plaintiffs.

Christopher D. Booth, George H. Cate, III, William T. Ramsey, Neal & Harwell, PLC, Nashville, TN, for Defendants.

## ORDER GRANTING MOTION TO DISMISS FRAUD CLAIMS AND REQUEST FOR PUNITIVE DAMAGES CONTAINED IN PLAINTIFFS' FOURTH AMENDED COMPLAINT

JON PHIPPS McCALLA, District Judge.

Before the Court is Defendants Per Aarsleff A/S, Aarsleff Rörteknik AB, and Aarsleff OY's (collectively, "Per Aarsleff") Motion to Dismiss Fraud Claims and Request for Punitive Damages Contained in Plaintiffs' Fourth Amended Complaint (Doc. 117), filed August 24, 2007. Plaintiffs Insituform Technologies, Inc. and INA Acquisition Corp. (collectively, "Insituform") responded in opposition on September 24,

2007 (Doc. 118). Per Aarsleff then filed a reply on October 19, 2007 (Doc. 122). A telephone hearing was held in the matter on December 3, 2007, at which the Court granted Plaintiff's request to file supplemental materials. Insituform filed a supplemental memorandum on December 11, 2007 (Doc. 129), and Per Aarsleff responded on December 17, 2007 (Doc. 131). For the following reasons, Per Aarsleff's Motion to Dismiss is GRANTED.

## I. Background

This case arises out of license agreements between Insituform and Per Aarsleff in which Insituform licensed its method for rehabilitating sewer pipes in exchange for royalties. Insituform is a Delaware corporation with its principal place of business in Missouri, and INA Acquisition Corp., an Insituform subsidiary, is a Delaware corporation with its principal place of business in Delaware. (Fourth Am. Compl. ¶¶ 1–2 (Doc. 112).) Per Aarsleff A/S and its two subsidiaries, Aarsleff Rörteknik AB and Aarsleff OY, are based in Denmark, Sweden, and Finland, respectively. (Id. at ¶¶ 5–9.) In the licensing agreements, the parties selected Tennessee as the chosen forum and Delaware law as governing the "validity, effect and construction of [the] Agreement." (Id. at Ex. 8, ¶ 22 (Doc. 112–9).)

Insituform alleges that Per Aarsleff failed to pay the proper amount of royalties under the license agreements, including breach of contract claims (the First through Eighteenth causes of action), a trade secret misappropriation claim (the Nineteenth cause of action), and fraud claims (the Twentieth through Twenty-fifth causes of action). (Id.) Per Aarsleff now seeks dismissal of the Twentieth through Twenty-fifth causes of action (the fraud claims), as well as the request for punitive damages.

## II. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss the plaintiff's complaint "for failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must treat all of the well-pleaded allegations of the complaint as true, *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir.1992), and must construe all of the allegations in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). "Although this is a liberal pleading standard, it requires more than the bare assertion of legal conclusions. Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Se. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 671–72 (6th Cir.2006) (*citing NHL Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 468 (6th Cir.2005) (citation omitted)).

## III. Analysis

Per Aarsleff claims that Insituform has failed to state a cognizable fraud claim because neither Tennessee nor any other jurisdiction at issue recognizes a claim based on fraudulent conduct during the performance of contractual obligations. (Per Aarsleff's Mot. Dismiss ("Defs.' Mot.") (Doc. 117), at 5.) The fraud claims alleged by Insituform in the Twentieth through Twenty-fifth causes of action all relate to Per Aarsleff's misrepresentations in calculating the royalties it owed Insitu-

form. (*Id.*) Per Aarsleff argues that its duty to calculate the royalties and report those calculations to Insituform, however, arise only out of the contractual obligations established by the license agreements; therefore Insituform has failed to allege any conduct independent of Per Aarsleff's alleged breach of contract. (*Id.*)

Insituform argues that the Twentieth through Twenty-fifth causes of action allege fraudulent misrepresentation and fraudulent nondisclosure, not fraudulent breach of contract. (Insituform's Mem. in Opposition ("Pls.' Resp.") (Doc. 118), at 6.) Specifically, Insituform claims that Per Aarsleff misrepresented that a formula was needed as a proxy for the total contract price to calculate royalties due and that Per Aarsleff failed to disclose to Insituform that it changed the formula, resulting in lower royalties paid to Insituform. (*Id.* at 7.) Insituform argues that the license agreements did not contemplate use of a royalty formula, and therefore the fraudulent conduct was only collateral to the contract. (*Id.*)

## A. Choice of law

### 1. Standard regarding choice of law

▆▆▆ In a case where federal jurisdiction is based on diversity of citizenship, "a federal court must apply the choice-of-law rules of the state in which it sits." *Mahne v. Ford Motor Co.*, 900 F.2d 83, 85 (6th Cir.1990) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Tennessee has adopted the approach of the Restatement (Second) of Conflict of Laws to determine the substantive law to apply to tort cases. *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn.1992). Under the Restatement's "most significant relationship" approach, "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." *Id.; see also Mac-*

*Donald v. Gen. Motors Corp.*, 110 F.3d 337, 342 (6th Cir.1997). In an action for fraud or misrepresentation,

(1) [w]hen the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship ... to the occurrence and the parties, in which event the local law of the other state will be applied.

(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Restatement (Second) of Conflict of Laws* § 148 (2007).

■ In determining which state's law to apply, "the court is to evaluate the[se] contacts 'according to their relative importance with respect to the particular issue,' and ... this is to be accomplished by carefully examining the policies behind the laws of the interested states and the interests of those states in the claim." *MacDonald,* 110 F.3d at 343 *(quoting Restatement (Second) of Conflict of Laws* § 145(2) (2007); *citing Id.* at cmt. e).

■■ However, before proceeding with the choice-of-law analysis, the Court must first determine if the laws of the various interested jurisdictions are in conflict with Tennessee law. *See Gov't Employees Ins. Co. v. Bloodworth,* 2007 WL 1966022, \*30 (Tenn.Ct.App. June 29, 2007)(finding that courts should avoid choice-of-law questions unless "the law of the other state or states differs materially from applicable Tennessee law"); *see also Aguirre Cruz v. Ford Motor Co.,* 435 F.Supp.2d 701, 704 (W.D.Tenn.2006)(*citing Hataway,* 830 S.W.2d at 55). Where no actual conflict exists, "the court may ignore choice of law questions and apply forum law." *Gov't Employees Ins. Co.,* 2007 WL 1966022 at \*29.

### 2. Whether a conflict exists

■ The Court finds that a conflict exists between the relevant Tennessee law and the law of at least one other interested forum. For the fraud claims, Insituform argues for the application of Missouri law, or, in the alternative, of Delaware law; Per Aarsleff argues for the application of the laws of Denmark, Sweden, and Finland (specifically, that the Court apply Swedish and Finnish law to the claims related to Per Aarsleff's Swedish and Finnish subsid-

iaries, respectively, and Danish law to the remaining claims, which are directed at the Danish parent company), or for the application of Delaware law in the alternative.

Of the applicable jurisdictions, the parties have only provided relevant authority for Delaware. For example, the authority Per Aarsleff cites from Danish, Swedish, and Finnish law refers only to fraudulent breach of contract, not whether a plaintiff can properly bring fraudulent misrepresentation claims along with its breach of contract claims. (*See, e.g.,* Decl. of Claes Simon Wildfang ¶ 3 (Doc. 117–2)("Under Danish law, where a plaintiff in a civil case alleges that the defendant violated the terms of a contract, the plaintiff only has remedies according to the law for breach of contract. Therefore, if a plaintiff alleges that a defendant acted fraudulently in violating a contract, the proper procedure is for the plaintiff to pursue a claim for breach of contract."); Decl. of Robert Wikholm ¶ 3 (Doc. 117–3)(stating the same as to Swedish law); Decl. of Hans Mikael Savola ¶ 3 (Doc. 117–4)(stating the same as to Finnish law).)

Conversely, Insituform offers authority only on claims of fraudulent inducement in the formation of a contract brought concurrent with breach of contract claims. *See, e.g., Verni v. Cleveland Chiropractic Coll.,* 212 S.W.3d 150 (Mo.2007)(discussing fraudulent inducement); *Joel Bianco Kawasaki Plus v. Meramec Valley Bank,* 81 S.W.3d 528 (Mo.2002)(same); Decl. of Kirsten Frijs Ex. 1, ¶ 30(2) (Doc. 129–1)(same). Here, however, Insituform has not alleged fraudulent inducement, and therefore these cases are inapposite.

■ Delaware law, however, affirmatively states that fraudulent misrepresentation claims are not appropriate in the context of breach of contract actions.[1] *See*

---

**1.** Again, the Delaware cases cited by Plaintiff regarding fraudulent inducement in the for-

mation of a contract are inapposite. *See, e.g.,*

*Pinkert v. John J. Olivieri, P.A.*, 2001 WL 641737, *4–5, 2001 U.S. Dist. LEXIS 8133, *16–18 (D.Del. May 24, 2001). The plaintiffs in *Pinkert* alleged, in addition to breach of a construction contract, claims that the defendants fraudulently misrepresented the nature of their work in submitting payment invoices by requesting payment for work that was not performed. *Id.* at *4, 2001 U.S. Dist. LEXIS 8133 at *13. The court dismissed the fraud claims, however, because "[t]hese alleged misrepresentations were not collateral to the Construction Contract, but rather memorialized as some of the ... defendants' principal obligations under their agreement with plaintiffs. The duty to submit periodic payment applications existed solely by reason of the Construction Contract." *Id.* at *5, 2001 U.S. Dist. LEXIS 8133 at *17. Like the applications for payment in *Pinkert*, the royalty reports submitted by Per Aarsleff were mere memorializations of Per Aarsleff's obligations under the agreements and did not represent an independent duty. *See also Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.*, 2005 WL 445710, 2005 Del.Super. LEXIS 57 (Del.Super.Ct. Feb. 23, 2005). Under Delaware law, therefore, Insituform has failed to make out a fraud claim, and the fraudulent misrepresentation claims would be dismissed.

 In contrast to Delaware law, the law of Tennessee appears to allow concurrent claims of breach of contract and

fraudulent misrepresentation. *See, e.g., Rest. Supply Solutions, Inc. v. Leischow*, 2007 WL 2904838, *7–8, *13 (M.D.Tenn. Sept. 30, 2007)(finding, in addition to breach of contract, fraudulent misrepresentations "prior to and during the contractual relationship").[2] A conflict exists between Tennessee law and at least one relevant forum, and therefore the Court will proceed with a full choice-of-law analysis.

### 3. Choice-of-law analysis

The Court will now apply the Restatement (Second) of Conflict of Laws relevant to fraud claims to determine the forum with the most significant relationship to the instant litigation. Because the alleged misrepresentations in this case were made in Europe, while the Plaintiff's reliance took place in the United States, the Court will apply the six factors listed in § 148(2).

The first factor, the place or places where Insituform acted in reliance on Per Aarsleff's representations, is in dispute. Insituform claims that it reviewed Per Aarsleff's royalty reports and issued invoices to Per Aarsleff for those royalties in Missouri. (Pls.' Resp. 12.) Per Aarsleff instead claims that all invoices for royalties were issued from Delaware by INA, Insituform's subsidiary. (Reply in Support of Per Aarsleff's Mot. to Dismiss ("Defs.' Reply")(Doc. 122), at 7.) Because INA was a party to all of the licensing agreements, while Insituform was not (Fourth Am.

*Lord v. Souder*, 748 A.2d 393 (Del.2000)(fraudulent inducement); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069 (Del.Super.Ct.1983)(same); *Lock v. Schreppler*, 426 A.2d 856 (Del.Super.Ct.1981)(same); *Nash v. Hoopes*, 332 A.2d 411 (Del.Super.Ct.1975)(same).

**2.** Tennessee appears to follow the majority view in allowing both claims. *See, e.g.*, Joseph M. Perillo, *Corbin on Contracts* § 28.14 (rev. ed. 2002)("Where a contract requires a

party to provide information to the other, e.g., a 'rent roll,' a negligent misrepresentation constitutes a breach of contract. If it is material, it is also grounds for avoidance of the contract. However, such a representation if intentionally made can be redressed as a tort and serve as a predicate for punitive damages." (emphasis and footnotes omitted)); *see also Gregory v. Chem. Waste Mgmt., Inc.*, 38 F.Supp.2d 598 (W.D.Tenn.1996)(applying Alabama law).

Compl. ¶¶ 65, 87, 110, 119, 141, 163, 186, 208), the only reliance that is relevant in this analysis is the reliance by INA. *See, e.g., Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London,* 147 F.3d 118, 127 (2d Cir.1998)("We will not pierce the corporate veil in favor of those who created it.")(interior quotations and citations omitted). INA issued the royalty invoices from Delaware and requested payment be sent to it in Delaware, and therefore INA relied on Per Aarsleff's representations in Delaware.

The second factor, the place where Insituform received Per Aarsleff's representations, points to both Missouri and Delaware, as Per Aarsleff sent some of its royalty reports to Insituform in Missouri and some to INA in Delaware. (Defs.' Reply 7.) However, under the reasoning given above, Insituform cannot be said to have "received" the reports for INA. *See, e.g., Tenn. Valley Auth. v. Exxon Nuclear Co.,* 570 F.Supp. 462, 465 (E.D.Tenn.1983)(finding that those who "chose particular corporate forms of carrying on their businesses to gain . . . advantages . . . must now abide by their choices"). The "place" relevant to this factor is "the place where the representations were first communicated to the plaintiff." *Restatement (Second) of Conflict of Laws* § 148 cmt. g (2007). INA received the communications in Delaware, regardless of whether those communications came directly from Per Aarsleff or through Insituform.

The third factor, the place where Per Aarsleff allegedly made misrepresentations, is not a subject of dispute among the parties. The representations by Per Aarsleff regarding the need for a royalty formula occurred in Denmark. (Fourth Am. Compl. ¶ 446.) Per Aarsleff instituted a reduction of that formula in Denmark. (Defs.' Mot. 14–15.) Per Aarsleff issued the royalty reports from itself in Denmark and from its subsidiaries in Sweden and Finland under the individual licensing agreements. (*Id.*) Therefore the places where the Defendant made the relevant representations are Denmark, Sweden, and Finland.

The fourth factor, the place of incorporation and the principal place of business of the parties, identifies six different interested jurisdictions. Insituform Technologies, Inc. is a Delaware corporation with its principal place of business in Missouri. (Fourth Am. Compl. ¶ 1.) INA Acquisition Corp., Insituform's subsidiary, is a Delaware corporation with its principal place of business in Delaware. (*Id.* ¶ 2.) Per Aarsleff A/S is a Danish corporation with its principal place of business in Denmark. (*Id.* ¶ 5.) Aarsleff Rörteknik AB is a Swedish corporation with its principal place of business in Sweden. (*Id.* ¶ 8.) Aarsleff OY is a Finnish corporation with its principal place of business in Finland. (*Id.* ¶ 9.)

The fifth factor, the place where the tangible subject of this contract is situated, is the licensing territory, which covers part of Europe, Africa, and Asia. (*Id.* ¶¶ 21–52; Defs.' Mot. 14.)

The sixth and final factor, the place where the plaintiff is to render performance under the contract, is not directly applicable to these licensing relationships and is not addressed by the parties.

Weighing the outcome of these factors and the policies each represents, the Court finds that Delaware has the most significant relationship to this litigation. According to the Restatement comments, "[i]f any two of the above-mentioned contacts, apart from the defendant's domicil, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law. . . ." *Restatement (Second) of Conflict of Laws* § 148 cmt. j (2007). Here, both the reliance on and the reception of the

representations took place in Delaware. In addition, "the plaintiff's ... principal place of business, if plaintiff is a corporation, [is a] contact[ ] of substantial significance when the loss is pecuniary," as it is in the instant case. *Id.* at cmt. i. Delaware, INA's principal place of business, is therefore a contact of "substantial significance." Furthermore, the place of reliance (here, Delaware) is a more important contact than both the place of reception (Delaware) and the place where the defendant made the representations (Denmark, Sweden, and Finland). *Id.* at cmt. g. Because Delaware has the most significant relationship to the occurrence and the parties, the law of Delaware will govern the fraud claims in this case.

### B. Analysis of the fraud claims

As discussed above in Part III.A.2, Delaware law does not recognize a claim of fraudulent misrepresentation in the context of a breach of contract action. *See, e.g., Pinkert v. John J. Olivieri, P.A.*, 2001 WL 641737, *4–5, 2001 U.S. Dist. LEXIS 8133, *16–18 (D.Del. May 24, 2001). The *Pinkert* court dismissed claims of fraudulent misrepresentation of invoices because the duty to provide the invoices arose through the underlying construction contract, and therefore the action sounded in contract, not in tort. *Id.* Like the duty in *Pinkert*, Per Aarsleff's duty to report its royalty calculations to Insituform arose only from the licensing agreements between the parties. Any alleged misrepresentations Per Aarsleff made in submitting the royalty reports may constitute a breach of contract but would not support a tort claim of fraud. Insituform's fraud claims are not cognizable under Delaware law, and therefore Per Aarsleff's motion to dismiss the Twentieth through Twenty-

fifth causes of action and the requests for punitive damages associated with them is GRANTED.[3]

## IV. Conclusion

For the forgoing reasons the Motion to Dismiss is GRANTED and each of the Twentieth through Twenty-fifth claims is DISMISSED.

---

**3.** Because the Court dismisses each of Insituform's fraud claims, the Court does not address the merits of Per Aarsleff's argument that the Twenty-fourth cause of action is barred by the statute of limitations.